¶ 1. Debbie Mitchell appeals a decision of the Chancery Court of DeSoto County, Mississippi granting Eddie Mitchell a divorce on the grounds of adultery and cruel and inhuman treatment, the failure of the chancellor to award any child support, and the division of marital property and debt division. Finding that the chancellor manifestly erred in granting Eddie a divorce on the grounds of adultery and habitual cruel and inhuman treatment, we reverse. Further, we remand for proceedings for consideration of temporary child custody and child support consistent with the terms of this opinion.
 FACTS
¶ 2. Eddie and Debbie Mitchell were married in August of 1984. The parties had two children, one born prior to their marriage and one born after they were married. The parties were finally separated in May of 1998. Following their marriage, the couple resided in Desoto County in a home which they owned. Debbie testified that she worked steadily throughout the course of the marriage, although she had changed jobs a number of times. Eddie testified that for the most part he had been employed throughout the marriage. Nevertheless, since 1991, Eddie has been employed on a part-time basis with Federal Express. In addition, during the course of the marriage Eddie opened up a furniture and "what-not" shop which he operated.
¶ 3. Eddie filed for a divorce on the grounds of uncondoned adultery, habitual cruel and inhuman treatment and, alternatively, irreconcilable differences. In his complaint, he alleged that he was a suitable person to properly care for his children and requested custody and control of the children. Further, he requested child support, exclusive ownership and possession of the marital home with all furnishings, full ownership in the business owned by him, attorneys fees and other relief. In response, Debbie, although not stating on what ground, asked for a divorce to be awarded to her, custody of the children, temporary and permanent alimony, exclusive use and title to marital home, fifty percent of Eddie's retirement and an equitable distribution of marital assets.
¶ 4. The chancellor granted Eddie a divorce on the grounds of adultery and habitual cruel and inhuman treatment. Debbie assigns the following errors on appeal which are take verbatim from her brief:
 I. WHETHER THE TRIAL JUDGE ERRED IN FINDING THE APPELLEE WAS ENTITLED TO A DIVORCE ON THE GROUNDS OF ADULTERY?
 II. WHETHER THE TRIAL COURT JUDGE ERRED BY FINDING THAT THE APPELLEE WAS ENTITLED TO OBTAIN A DIVORCE ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT?
 III. WHETHER THE TRIAL JUDGE ERRED IN ITS PROPERTY DIVISION AND DEBT ASSIGNMENTS?
 IV. WHETHER THE TRIAL JUDGE ERRED BY FAILING TO REQUIRE THE APPELLEE TO MAKE CHILD *Page 1040 SUPPORT PAYMENTS FOR THE BENEFIT OF THE MINOR CHILDREN OF THE PARTIES.
 ANALYSIS OF THE ISSUES I. WHETHER THE TRIAL JUDGE ERRED IN FINDING THE APPELLEE WAS ENTITLED TO A DIVORCE ON THE GROUNDS OF ADULTERY?
¶ 5. On a claim for adultery, a party is required to show his claim by clear and convincing evidence. Dillon v.Dillon, 498 So.2d 328, 330 (Miss. 1986). There must be clear and convincing evidence both of an adulterous inclination and a reasonable opportunity to satisfy that inclination. Id.
Circumstantial evidence may be used prove such a claim, but the plaintiff retains the burden of presenting satisfactory evidence sufficient to lead the trier of fact to a conclusion of guilty.Id. "Such evidence need not prove the alleged acts beyond a reasonable doubt and the plaintiff is not required to present direct testimony as to the event complained of due to their secretive nature." McAdory v. McAdory, 608 So.2d 695, 698 (Miss. 1992) (quoting Dillon, 498 So.2d at 330).
¶ 6. In the final order of divorce, the chancellor awarded Eddie a divorce, though he did not indicate on what grounds the divorce was being awarded. However, the chancellor made findings orally following trial on the matter. He concluded that the grounds for adultery had been met on the basis that:
 the Defendant entered into a course of conduct of mistreatment toward him [Eddie] which consisted of adultery shown by an adulterous inclination and opportunity to satisfy that inclination as exhibited, by among other things, checking into and expending family funds for hotel rooms without her husband and without sufficient explanation; two, absenting herself from the home virtually all night long at — and at night without little explanation as to her whereabouts; and number three, maintaining private telephone conversations with other men under circumstances which would cause one to suspect an adulterous relationship as shown by her constantly being paged even into the late hours of the night.
¶ 7. Eddie testified that Debbie stayed in an hotel room on several occasions while the parties were married. Having been called as an adverse witness, Debbie testified that she did in fact stay in a hotel on occasions because of Eddie's physical and emotional abuse towards her and her children. Eddie acknowledged that "[a] couple of times she got mad at me and arguing and her and the girls went. I did not know where they were. She said they were at a hotel."
¶ 8. Eddie testified that he would get off of work at 4:00 a.m. and arrive home to find that Debbie was not there. On two occasions he stated that he went to look for her at her work place but could not find her. He testified that Debbie's response to him was that she was gambling at the casinos. On November 4, 1997, Eddie testified that he sought to spend some time with Debbie because it was her birthday. He stated that he could not find her and was told that her girl friends had taken her out, though he later learned that she was in a hotel room.
¶ 9. Eddie complained that one evening in the middle of the night he picked up the phone and there was male voice asking Debbie if she had arrived home safely. Eddie also complained that Debbie received pages and she would return the calls, presumably to talk to her boyfriend as Eddie asserts. There was no testimony, however, that Eddie knew the person or persons to whom Debbie was talking. Eddie did not produce any evidence of the identity of the person with whom his wife was allegedly having an adulterous relationship. Eddie stated that he discovered that Debbie was spending money on hotel rooms and gambling at the casinos when he attempted to straighten out the parties' finances. *Page 1041 
¶ 10. In response to questions regarding his acquiring a venereal disease, Eddie testified that it was not him who had contracted a venereal disease through relations with someone else, but it was Debbie who had acquired the disease from a man named Johnny Johnson. Eddie testified that he intercepted a letter from Johnson to Debbie. The letter, however, was not produced at trial. Nor was this alleged relationship asserted as a cause of the breakdown of the marriage.
¶ 11. In cases involving allegations of adultery, the chancellor is required to make a finding of fact. Where a chancellor makes such findings, the supreme court has held that his decisions will not be set aside on appeal unless they are manifestly wrong. Brooks v. Brooks, 652 So.2d 1113, 1117 (Miss. 1995). "Adultery may be shown by evidence or admissions and either are sufficient to support a decree of divorce."Harmon v. Harmon, 757 So.2d 305 (¶ 8) (Miss. Ct. App. 1999).
¶ 12. Having reviewed the record, we are unable to unearth sufficient evidence from which the chancellor could determine that Debbie possessed an inclination towards adulterous behavior. There was no direct evidence of Debbie's alleged adultery. Where one seeks to prove a claim of adultery using circumstantial evidence, "the conclusion sought to be established must follow logically from the facts and must be inconsistent with a reasonable theory of innocence." Dillon, 498 So.2d at 330. In this case, the only evidence of any adultery was through Eddie's testimony, which alone did not amount to clear and convincing evidence of Debbie's adulterous inclination or opportunity to act on such tendency. Eddie alleged that Debbie spent her money on hotel rooms, but did not produce any records showing how many times she stayed in hotel rooms, the dates or how much she spent. He stated that she spent time on the phone with her "boyfriend," but did not show to whom she may have been talking, nor did he provide any telephone records evincing the time she spent on the phone or the number of pages she received. The chancellor found that Debbie's absences from the home were not sufficiently explained. However, the burden remained on Eddie to prove his claim of adultery. Dillion, 498 So.2d at 330. This burden cannot be met with only "he said, she said" testimony alone. The circumstantial evidence presented by Eddie does not lead one only to the conclusion of guilt as required by case law. See McAdory, 608 So.2d at 699.
¶ 13. We rule that Eddie failed in his burden to show clear and convincing evidence of adultery. Furthermore, based on the evidence presented, the chancellor manifestly erred in finding that sufficient evidence was produced to support a finding of clear and convincing evidence of adultery. Accordingly, we reverse the award of divorce on the ground of adultery.
 II. WHETHER THE TRIAL COURT JUDGE ERRED BY FINDING THAT THE APPELLEE WAS ENTITLED TO OBTAIN A DIVORCE ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT?
¶ 14. To support a divorce on the ground of habitual cruel and inhuman treatment, the conduct which evinces habitual cruel and inhuman treatment must be such that it (1) endangers life, limb, or health, or creates a reasonable apprehension of such danger and renders the relationship unsafe for the party seeking relief, or (2) renders the marriage revolting to the non-offending spouse because it is so unnatural and infamous, and makes it impossible to carry out the duties of the marriage, therefore destroying the basis for its continuance. Daigle v.Daigle, 626 So.2d 140, 144 (Miss. 1993); Gardner v.Gardner 618 So.2d 108, 113-14 (Miss. 1993). The party seeking a divorce on such ground is required to produce evidence of habitual cruel and inhuman treatment by a preponderance of the evidence *Page 1042 
and such evidence must show more than unkindness or rudeness or mere incompatibility or lack of affection. Daigle, 626 So.2d at 144 (quoting Smith v. Smith, 614 So.2d 394, 396 (Miss. 1993)). In Wilson v. Wilson, 547 So.2d 803 (Miss. 1989), the Mississippi Supreme Court stated:
 In years gone by, this Court has consistently held that habitual cruel and inhuman treatment could be established only by a continuing course of conduct on the part of the offending spouse which was so unkind, unfeeling or brutal as to endanger or put one in reasonable apprehension of danger to life, limb or health, and further, that such course of conduct must be habitual, that is, done so often, or continued so long that it may be reasonably said a permanent condition.
Id. at 805. Even further, the Mississippi Supreme Court has stated: "We have repeatedly counseled against finding the ground based on petty indignities, frivolous quarrels, general incompatibility or petulant tempers." Howard v. Howard,243 Miss. 301, 303-04, 138 So.2d 292 (1962). The supreme court has further recognized "that courts have become liberal in the application of proof on the habitual cruel and inhuman treatment ground. However, by no means have they made a farce and mockery of the requirement to prove the ground." Gallaspy v.Gallaspy, 459 So.2d 283, 285 (Miss. 1984).
¶ 15. The chancellor, again in his oral findings, determined that the adulterous conduct of Debbie resulted in numerous arguments between the parties making the marriage unbearable for Eddie. The chancellor stated that
 This conduct was corroborated by witnesses and its adverse affect on the Plaintiff was further substantially corroborated, and the Court finds again by clear and convincing evidence that the that the Plaintiff is entitled to a divorce on the grounds of adultery against his wife, and further, by a preponderance of the evidence finds that he's entitled to a divorce on the grounds of habitual cruel and inhuman treatment.
(Emphasis added). We first note that the record does not support the conclusion that Debbie's alleged adulterous conduct was corroborated by witness testimony as the chancellor indicates. Witness testimony offered by Eddie focused on Eddie's disposition related to the troubled marriage. In no way did the witnesses substantiate Eddie's testimony that Debbie was engaged in extramarital relationships.
¶ 16. As to his cruel and inhuman treatment claim, Eddie testified that he did everything he possibly could to make the marriage work, but that eventually it became intolerable for him to reside in the marital home, so he left. He testified that Debbie would get mad at him constantly, "for no reason at all, [and] run off from the house." He stated that he was tense around his home "because of the way she was carrying on, her conduct" which, to him, made living at home unbearable. Eddie indicated that he suffered mentally because of Debbie's conduct and testified that he and Debbie just "couldn't see eye to eye on things." He testified: "I couldn't get her to try to understand, you know, the finances and trouble we was in and it was just chaos."
¶ 17. Nikeal Reynolds, Debbie's son from a previous relationship, testified. He stated that Debbie and Eddie fought like "cats and dogs" and he had heard doors swinging and coming off the hinges. When asked about occasions such as that, Eddie responded: "Just arguments. Just arguments." He denied that he and Debbie ever had any physical fights. He stated:
 She argued constantly about nothing. Basically we argued about something that was going on in somebody else's household. I was trying to convince her that we don't need to be concerned about anything else going on in anybody's else's household. We've got business that we need to take care of in our own household. *Page 1043 
Other testimony offered by Eddie was that of his brother, Willie Thomas, and long time friend, Kenneth Massey. While Thomas did not have first hand knowledge of any cruel and inhuman treatment by Debbie, he testified that his brother seemed more depressed in his marriage to Debbie. He indicated that Eddie and Debbie's problems were dragging Eddie down. Kenneth Massey testified that Eddie had informed him of the problems he and Debbie were having. Like Thomas, Massey testified that Eddie seemed to be down and depressed from his marriage problems.
¶ 18. Eddie testified that some of the parties' troubles occurred in 1996 and 1997. In response, Debbie testified that her mother died in 1996 and four months later in 1997, her father died. She testified that she was in shock over the deaths of her parents and was not able to "function." Debbie assumed Eddie would take care of the responsibilities of their home and finances for a time. She stated that during that time she was under the care of a doctor. Debbie stated that it was then that Eddie became more abusive towards her. Debbie stated that on the day of her mother's funeral Eddie left her to go out with some of his friends despite her requests that he not leave her alone that day. She stated, "He wasn't there for me."
¶ 19. The above stated testimony was all the evidence that Eddie offered in support of his claim for grounds for divorce on habitual cruel and inhuman treatment. The facts in this case do not meet the standard for habitual cruel and inhuman treatment as they do not show an endangerment to "life, limb or health" or any reasonable fear thereof or any unnatural conduct as to make the marriage revolting. The fact that Debbie was argumentative does not amount to proof of cruel and inhuman treatment. It may be that the parties are incompatible, and the marriage is not reconcilable. Nonetheless, the chancellor erred in granting Eddie a divorce on this ground as he failed to present sufficient proof to support his claim.
¶ 20. We will only reverse the findings of a chancellor in cases of divorce where we find the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard.Steen v. Steen, 641 So.2d 1167, 1169 (Miss. 1994). In this case, the evidence was woefully insufficient to support the claim of cruel and inhuman treatment. Accordingly, we find that the chancellor was manifestly wrong and clearly erroneous in granting Eddie a divorce on the grounds of habitual cruel and inhuman treatment.
 III. WHETHER THE TRIAL JUDGE ERRED IN ITS PROPERTY DIVISION AND DEBT ASSIGNMENTS?
¶ 21. Because we are reversing the award of a divorce to Eddie, the issue of property division and debt assignment should be reconsidered by the chancellor in the event that either of the parties is granted a divorce in the future.
 IV. WHETHER THE TRIAL JUDGE ERRED BY FAILING TO REQUIRE THE APPELLEE TO MAKE CHILD SUPPORT PAYMENTS FOR THE BENEFIT OF THE MINOR CHILDREN OF THE PARTIES?
¶ 22. In determining the custody arrangements for the parties minor children, the chancellor, while giving Debbie primary physical custody, announced that he was awarding Eddie fifty percent visitation or custody. In fashioning visitation, the chancellor determined that Eddie would have visitation every other weekend, alternating holidays, ten weeks in the summer, and any other time agreed upon by the parties. The chancellor concluded that since he was awarding Eddie fifty percent visitation/custody, neither party was required to pay child support to the other. The chancellor did require Eddie to maintain health insurance on the two children. The chancellor did not make any written findings regarding his decision not to award child support. However, after trial *Page 1044 
the chancellor orally made the following findings and conclusions:
 We turn from custody and visitation to the issue of support. Pursuant to Section 43-19-101 of the Mississippi Code, a rebuttable presumption exits that in this case with two children 20 percent of the adjusted gross income of the noncustodial parent, and in this case the father, would be an appropriate amount of child support. That is a rebuttable presumption that may only be rebutted after examining the factors set forth in Section 43-19-103, and having examined that, the Court notes under Subsection G of that statute, one of the factors for the Court to consider is the particular shared parental arrangement, such as where the noncustodial parent spends a great deal of time with the children, thereby reducing the financial expenditures incurred by the custodial parent. That is obviously present, particularly in light of this visitation schedule which I'm awarding.
 Accordingly, the Court finds that pursuant to Section 43-19-103, the rebuttable presumption has been overcome by the application of that factor, and if the father shall maintain the children a period of 50 percent of the time as he has done and which by order he is being allowed to do, there will be no award of monetary support on a monthly basis.
¶ 23. The chancellor noted that Eddie currently spends fifty percent of his time caring for his two daughters. Evidence of this primarily came from Eddie's testimony in which he stated that he checks on the girls after he gets off of work everyday and buys groceries for them. Debbie testified that he rarely exercised any visitation with the girls. More compelling, however, is the testimony of the parties oldest daughter, Afrika. The fifteen-year-old testified that in the time that her parents have been separated she has only spent one night with her father. She stated: "I don't go to his house. He don't have a house for me to go to." Eddie does not have home. He testified that he spends most of his time either at work with Federal Express or at his furniture and "what-not" shop business. He testified that he often stays the night with a friend to get a good night sleep and to take showers. Afrika testified to the chancellor that she preferred to live with her mother because she did not like the way her father treats her and her mother. Debbie testified that the minor girls often did not want to spend time with their father. She stated that her younger daughter did spend more time with Eddie than her older daughter.
¶ 24. While Eddie requested the exclusive use and possession of the marital home, the chancellor ordered that the home be sold and the proceeds divided. At the time of trial, Eddie did not have a residence to exercise visitation. Nevertheless, the chancellor determined that his visitation schedule would allow Eddie to have fifty percent visitation with the two children. This is erroneous because every other weekend, ten weeks in the summer and alternating holidays does not amount to fifty percent visitation. In our calculations, ten weeks in the summer and every other weekend will give Eddie visitation of 122 days a year, not including the award of alternating holidays. But even including an estimation of two weeks time for holidays, Eddie still would not have "50% visitation" as the chancellor concludes. Accordingly, we find that the chancellor's findings that Eddie was given fifty percent visitation was clearly erroneous, and that the chancellor's decision not to award child support was rebutted by the evidence and was clearly erroneous.
¶ 25. Because we have determined that there was insufficient evidence on which to sustain a divorce between the parties, the issue of custody is likewise remanded. We rule that the chancellor, in a hearing, must reconsider the issues of custody and child support in a temporary award for the care and maintenance of the children while the parties are separated. We further urge the chancellor to reconsider the matter of *Page 1045 
child support. The testimony regarding the parties' finances is scant at best. However, what can be gleaned from the record is that Eddie has steady employment with Federal Express and brings in extra income from his "what not" business. Financial statements of either party were not filed with the lower court. The testimony of parties did reveal that Eddie's income was more than Debbie's.
¶ 26. Accordingly, we remand this case for a temporary hearing on the care and maintenance of the minor children.
¶ 27. THE JUDGMENT OF THE CHANCERY COURT OF DESOTOCOUNTY IS REVERSED AND REMANDED FOR A HEARING ON THE ISSUES OFTEMPORARY CUSTODY AND TEMPORARY CHILD SUPPORT CONSISTENT WITH THETERMS OF THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TOTHE APPELLEE.
KING AND SOUTHWICK, P. JJ., BRIDGES, IRVING, LEE, MYERS,AND PAYNE, JJ., CONCUR. McMILLIN, C.J., AND MOORE, J., NOTPARTICIPATING.