# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-00900-SCT

*GARY M. DAVIS*

*v.*

*SHARON DAVIS*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/30/2000 |
| TRIAL JUDGE: | HON. JOHN S. GRANT, III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL P. YOUNGER |
| ATTORNEYS FOR APPELLEE: | WILLIAM R. WRIGHT |
| | MARIL FAITH RISHER |
| | W. BENTON GREGG |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED- 12/12/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**McRAE, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Dr. Gary M. Davis appeals from an order entered by the Rankin County, Chancery Court denying his motion for a new trial, or in the alternative, motion to reconsider an earlier ruling granting Sharon Davis a divorce on the grounds of adultery, granting her both periodic and lump sum alimony, and causing a division of the marital assets. Gary argues that the chancellor abused his discretion in the aforementioned determinations.

¶2.     We find no abuse of discretion. Accordingly, we affirm the final judgment.

## FACTS

¶3. Dr. Gary M. Davis and Mrs. Sharon Davis met when Gary was a third year medical resident at a hospital in Baltimore, Maryland. Sharon was employed as a nurse in the same hospital and was enrolled in graduate school for a master's degree in nursing. After several months of dating, the two were married on May 16, 1982.

¶4. Gary and Sharon moved six times from 1982 to 1991 before Gary settled into a practice in Jackson, Mississippi. After the birth of their first child in 1983, Gary and Sharon agreed that Sharon would discontinue her work as a nurse and stay home with their child. Their second child was born in 1984, and the third was born in 1992. The children first attended the Seventh Day Adventist School in Jackson, then Rankin County Public Schools, were home-schooled by Sharon for a while and were finally enrolled in St. Andrew's Episcopal School in 1998.

¶5. Gary's practice in Jackson grew. He now has an ownership interest in Diversified Renal Group, Inc. and several dialysis units. The couple's net assets have grown throughout the marriage to $3.45 million, and Gary's income in 1999 was in excess of $550,000.

¶6. Sharon filed a complaint for divorce on July 23, 1998. Her complaint alleged adultery, habitual cruel and inhuman treatment, and desertion pursuant to Miss. Code Ann. § 93-5-1 (1994); in the alternative, or as a separate ground, irreconcilable differences pursuant to Miss. Code Ann. § 93-5-2 (1994). Gary filed his answer denying Sharon's allegations for divorce on August 5, 1998.

¶7. An agreed temporary order was issued on September 8, 1998, which gave Sharon temporary physical custody of the children, temporary support for Sharon and the children and provided Sharon the exclusive use of the marital home. On February 24, 1999, an amended temporary order was issued awarding Gary visitation with the children and providing further instructions for the temporary support of Sharon and the children.

¶8. After a hearing, the court entered its rulings in August of 2000 on the issues of divorce and grounds, division of marital property, alimony award, custody and visitation, and amounts still owed under the prior temporary orders. On November 30, 2000, the final judgment was entered which addressed the grounds for and award of divorce, child custody and visitation, child support, disclosure of addresses, medical and dental expenses for the children, children's college, life insurance, division of marital assets, income tax provision, alimony, past due support obligations, and marital debt.

¶9. On December 4, 2000, Gary filed a motion to amend the final judgement and a motion for a new trial or in the alternative a motion to reconsider, all of which were denied. An amended order was issued in June of 2001 that modified the computation of Gary's gross income and provided more specificity on the findings supporting the award of lump sum alimony. Gary timely appealed to this Court.

**STANDARD OF REVIEW**

¶10. The "Court views the facts of a divorce decree in a light most favorable to the appellee and may not disturb the chancery decision unless the Court finds it manifestly wrong or unsupported by substantial evidence." *Fisher v. Fisher*, 771 So.2d 364, 367 (2000).

3

## DISCUSSION

### I. WHETHER THE CHANCELLOR ERRED IN HIS FINDINGS OF ADULTERY AS THE PROPER GROUNDS FOR DIVORCE.

¶11.    Gary argues that the character of his sexual conduct with Edith Russell was misunderstood by the chancellor.  He argues that since the sexual conduct occured after the physical separation of the parties it should not be considered uncondoned adultery; and therefore, the chancellor should not have granted the divorce on the ground of adultery.

¶12.    The final judgment of divorce grants Sharon the divorce on the ground of uncondoned adultery pursuant to Miss. Code. Ann. § 93-5-1.  Sharon had the burden of proving adultery by clear and convincing evidence.  *Dillon v. Dillion*, 498 So.2d 328, 330 (Miss. 1986); *Mitchell v. Mitchell*,  767 So.2d 1037, 1040 (Miss. Ct. App. 2000).   She satisfied this burden when, on direct examination, Gary admitted to the adulterous conduct.  The record shows no evidence or any attempt by Gary to rebut the admission or to explain the events of the adulterous conduct.  "'Adultery may be shown by evidence or admissions and either are sufficient to support a decree of divorce.'"  *Holden v. Frasher-Holden,* 680 So.2d 795, 799 (Miss. 1996) (quoting *Jordan v. Jordan*, 510 So.2d 131, 132 (Miss. 1987)).

¶13.    Gary raised the issue of his adulterous conduct and attempted to explain the circumstances surrounding such conduct for the first time in his December 4, 2000, Memorandum In Support of Motion for New Trial, or in the Alternative, Motion to Reconsider.  Not only did Gary admit to the adulterous conduct during trial, his attorney admitted the

4

conduct was adulterous during the March 27, 2001, hearing on the motion. Gary then, and now, tries to argue that since the adulterous conduct did not cause the separation, then it is not sufficient evidence for a divorce based on uncondoned adultery.

¶14.    The Legislature did not condition the granting of a divorce on the ground of adultery upon the adulterous conduct actually causing the legal separation of the parties. Miss. Code Ann. §93-5-1. The statute explains that "[i]t shall be no impediment to a divorce that the offended spouse did not leave the marital domicile or separate from the offending spouse on account of the conduct of the offending spouse." *Id*. § 93-5-4. The "[l]aw does not require that ground for divorce, such as adultery, arise before separation." ***Talbert v. Talbert***, 759 So.2d 1105, 1110, (Miss. 1999). It has never been required that the adultery be causally related to the final separation of the parties to be a valid basis for granting a divorce. ***Id.***

¶15.    Gary's alleged sexual misconduct with Mrs. Russell may not have caused Sharon to file her complaint for divorce, but it is still uncondoned adultery. Gary's characterization of the adultery as a "one night stand" does not make the sexual misconduct any less adulterous.

¶16.    The chancellor did not err in granting Sharon a divorce on the grounds of adultery pursuant to Miss. Code Ann. § 93-5-1.

> **II.     WHETHER THE CHANCELLOR ERRED IN HIS AWARDING OF PERIODIC AND LUMP SUM ALIMONY TO SHARON DAVIS**.

### A.  PERIODIC ALIMONY AWARD

¶17.    Gary contends that the trial court erroneously granted Sharon periodic or permanent alimony in the amount of $4,000 per month. Gary's chief argument is that the trial court

misapplied the factors for awarding periodic alimony and weighed too heavily on the finding of adultery in making the determination of the requisite amount of alimony due. He submits that the trial court misunderstood the nature and character of the sexual misconduct and in making the alimony rulings used that conduct against him as a type of punishment.

¶18. Sharon argues that the trial court properly applied and carefully weighed the factors for the awarding of periodic alimony as shown in his August 28, 2000, order. She further argues that the trial court may have taken Gary's fault into consideration when making such alimony determination, but there was no over-weighing of such factor.

¶19. In determining whether to make an award of periodic alimony, the following factors must be considered: (1) the health of the husband and his earning capacity; (2) the health of the wife and her earning capacity; (3) the entire sources of income and expenses of both parties; (4) the reasonable needs of the wife; (5) the reasonable needs of the child; (6) the necessary living expenses of the husband; (7) the estimated amount of income taxes the respective parties must pay on their incomes; (8) the fact that the wife has the free use of the home, furnishings and automobile; (9) the length of the marriage; (10) the presence or absence of minor children in the home; (11) the standard of living of the parties, both during the marriage and at the time of the support determination; (12) fault or misconduct; (13) wasteful dissipation of assets; (14) the obligations and assets of each party; (15) the age of the parties; (16) the tax consequences of the spousal support order; and (17) such other facts and circumstances bearing on the subject that might be shown by the evidence. *Hemsley v. Hemsley*, 639 So.2d 909, 912 (Miss. 1994); *Armstrong v. Armstrong*, 618 So.2d 1278, 1280 (Miss. 1993); *Hammonds v. Hammonds*, 597

6

So.2d 653, 655 (Miss. 1992); **Brabham v. Brabham**, 226 Miss. 165, 84 So.2d 147, 153 (1955). In determining the amount of support payable to the wife, a chancellor must consider "not only reasonable needs of wife but also right of husband to lead as normal a life as reasonably possible with a decent standard of living." **Massey v. Massey**, 475 So.2d 802, 803 (Miss. 1985); **Hopton v. Hopton**, 342 So.2d 1298, 1300 (Miss. 1977) (quoting **Nichols v. Nichols**, 254 So.2d 726, 727 (Miss. 1971)).

¶20.     In the August 28, 2000, order, and the June 4, 2001, amended order, the chancellor gave a detailed factual account for his finding for periodic alimony.  Following the factors outlined for the award of periodic alimony, the chancellor found that:

(1) Gary is presently in good health and has no illness that would hinder him from continuing to earn such a productive income.  Gary by his own testimony admits to being in good health with years of earning capability.

(2) Sharon is unemployed and earning no income.  She is currently ill due to an automobile accident which left her with an injured leg.  To qualify for a nursing position she will need many hours of re-certification training.  The chancellor also makes note of Sharon's diagnosis of depression which has required medication in the past.

(3) Sharon is a 44 year old nurse who is currently unemployed and who has been entirely dependent on Gary for income since 1982.  To re-certify and be eligible for gainful employment in the field of nursing, Sharon needs 1,000 credit hours in re-certification training.  Gary has a steady stream of income generated by his lucrative medical practice and business ownership. Gary is 48 years old and currently earning in excess of $594,250 a year, which amounts to

7

$49,520.00 per month as gross income, and $34,418.00 in adjusted gross income. Sharon, who is currently living in Baltimore, Maryland, has increased expenses due to the increased cost of living and a recent injury in a car accident.

(4) Sharon's needs are estimated at $10,138.33 per month. Alimony in the amount of $4,000 per month was granted to Sharon.

(5) The needs of the children are estimated to be $8,740.00 each month. Child support in the amount of $1,500.00 per month per child (which aggregates to $4,500.00 each month for all the children) was awarded.

(6) The necessary living expenses of Gary cannot be said to exceed $25,918.00 per month (the amount of adjusted gross income remaining after payment of alimony and child support). Gary himself admitted to being a modest spender.

(7) Gary was granted entitlement to claim the children as dependents for income tax purposes. The chancellor also noted that his consideration of the possible tax consequences of the alimony award.

(8) Sharon does not have the free use of the home, home furnishings, and automobile. Gary requested the marital home be granted to him in the division of marital property. Sharon is currently living in a home owned by a relative in Baltimore, Maryland, and driving an automobile provided to her by another family member.

(9) Sharon and Gary had been married for 16 years at the time the complaint was filed.

(10) Sharon has all three children residing with her in Baltimore, Maryland. The chancellor considered the expenses and needs of Sharon and the children.

8

(11) The chancellor also took notice of the consideration of the parties past and present standard of living.

(12) The chancellor noted that Gary's misconduct (uncondoned adultery) is a factor to be weighed with **all** the other factors in making an alimony determination. The chancellor's rulings do not indicate any undue weight given to the wrong doing of Gary. The chancellor stated that "the court does not punish Gary for his marital indiscretion."

(13) The chancellor made no determination as to whether either party was guilty of a wasteful dissipation of assets. However, both parties during trial presented evidence tending to show that the other was guilty of wasteful dissipation of assets. Sharon presented evidence that Gary was withholding insurance proceeds from an insurance claim concerning her automobile that was destroyed in a collision and that Gary attempted to transfer his business assets to his partner before the divorce proceedings. Gary presented evidence that Sharon was withholding an income tax check in the amount of $40,000 and that the children were claimed as her dependents on her tax return thereby causing him to incur additional income tax.

(14) The chancellor considered the obligations and assets of each party.

(15) Sharon is 44 years old, and Gary is 48 years old. Gary is in good health and there is no reason why he will not continue to work for years to come. Sharon is currently in ill health due to an auto accident and has a history of depression requiring medication.

(16) The tax consequences of a spousal support order were considered.

(17) The court made no reference to specific other relevant factors considered in the award of periodic alimony.

¶21. In summary, the chancellor found that the award of periodic alimony would not prevent Gary from living a normal life under a reasonable standard of living. Gary's adjusted monthly gross income is $34,418.00. The chancellor granted Sharon alimony in the amount of $4,000.00 per month and child support in the amount of $1,500.00 per child (which aggregates to $4,500.00 each month for all the children). This leaves Gary with $25,918.00 of income left per month (roughly $311,016.00 per year) which is more than ample for him to lead a normal life with a reasonable standard of living.

¶22. We have upheld a $4,200.00 a month periodic alimony award in a divorce involving $4 million in marital property and where the husband's yearly adjusted gross income amounted to $409,396. *Waring v. Waring*, 747 So.2d 252, 254 (Miss. 1999). The chancellor in this case awarded Sharon $4,000 a month in periodic alimony and the marital property totals $2,444,078.90.

¶23. A significant disparity in earning capacity is a major factor in the determination of a periodic alimony award. *Vaughn v. Vaughn*, 798 So.2d 431, 436 (Miss. 2001). The record shows that there is a great disparity in earning capacity between Gary and Sharon. Likewise her earning capacity has been diminished by her foregoing a career to raise their family. If she was to obtain nursing re-certification, she would still begin work with no seniority and a salary that would not be comparable to that of Gary. The chancellor did not abuse his discretion in providing Sharon with periodic alimony in the amount of $4,000.00 per month. The decision to award alimony is amply supported by the evidence and involved in-depth fact finding on the part of the chancellor. Further, there is no indication in the record or the rulings

10

that the chancellor weighed too heavily on the adultery factor in making his determination to award Sharon alimony.

## B. LUMP SUM ALIMONY

¶24. Gary argues that the chancellor erred in applying the factors for the awarding of lump sum alimony when he granted Sharon $50,000 in lump sum alimony. He argues that the chancellor erred in finding that Sharon was financially insecure as to warrant lump sum alimony and that the amount granted was excessive and most likely influenced by the finding of adultery.

¶25. Sharon argues that the chancellor properly applied the lump sum alimony factors. She argues that the judge did not over-weigh the adultery finding and that the award was supported by evidence that such an award was needed for her financial security.

¶26. In determining whether to award lump sum alimony, the chancellor must analyze and apply the *Cheatham* factors which include:

> (1) substantial contribution to accumulation of total wealth of the payor either by quitting a job to become a housewife, or by assisting in the spouse's business;
> (2) a long marriage;
> (3) where recipient spouse has no separate income or the separate estate is meager by comparison;
> (4) without the lump sum award the receiving spouse would lack any financial security.

*Cheatham v. Cheatham*, 537 So.2d 435, 438 (Miss. 1988).

¶27. The chancellor gave a detailed factual account to support his finding for the $50,000 lump sum alimony award. The facts supporting his findings include:

(1) Sharon quit her nursing job in 1983 to resume the role of mother and sacrificed her own education to support Gary in his advancement and training. She further provided a stable home life and was a loving mother to their children.

(2) The marriage between the parties was of considerable length, lasting 16 years before Sharon filed the complaint for divorce. During this time period, all of the $2,244,079.92 assets were accumulated through the efforts of both parties.

(3) Sharon has had no independent means of income since 1983 and at the time of trial continued to be totally dependent on Gary's temporary support payments. Her ability to gain employment in the field of nursing is dependent upon her completing re-certification classes which would require her to forego time with the children and would cost a considerable amount of money. Gary, on the other hand, is earning $34,418.00 adjusted gross income per month ($413,016.00 adjusted gross income per year).

(4) Without the lump sum alimony payment "Sharon would lack financial security to the extent she was financially secure prior to the separation from [Gary]."

¶28. Applying the same factors, we have affirmed an award of $150,000 in lump sum alimony to the wife where the marital property totaled $1.8 million, there were no children to the marriage, the marriage was short in duration, and the husband was physically unable to work even though an additional award of periodic alimony had been granted. *Pearson v. Pearson*, 761 So.2d 157, 165 (Miss. 2000).

¶29. The record shows that the decision was amply supported by evidence and sufficient factual findings. Further, there is no indication that the chancellor considered Gary's fault as

12

a deciding factor in his determination of lump sum alimony. Therefore, the chancellor did not abuse his discretion in awarding Sharon the $50,000 lump sum alimony.

### III. WHETHER THE CHANCELLOR ERRED IN HIS DIVISION OF THE MARITAL ASSETS OF GARY AND SHARON DAVIS.

¶30. Gary argues that the chancellor misapplied the factors used in the division of marital property. His chief argument is that even though the property was divided 50/50 on a balance sheet, the property was not equitably divided if the tax consequences to him are considered. Gary asserts that the granting of mostly liquid assets to Sharon and some liquid and non-liquid assets to himself is inequitable in that he will have to suffer tax consequences to convert such assets to cash whereas Sharon will not.

¶31. Sharon argues that the marital assets were split 50/50 and that any distinction between liquid and non-liquid is not error. She argues that Gary himself essentially requested some of the non-liquid assets when he stated during trial that he was not willing to share or split the marital residence or business assets with Sharon. She also points out that the business assets which were granted solely to Gary have a large future earning capacity. Also of note is the fact that Gary has a large monthly income and Sharon has none, tending to show that Sharon has more of a need for access to cash that could be gained by liquid assets.

¶32. The chancellor identified each piece of property in question and described the character and nature of such property based on testimony offered at trial. Such properties included a home, land, bank accounts, investment and retirement accounts, personal property, business holdings, and other assets. The chancellor then decided that all property put at issue was

13

marital property. In reaching this determination, the chancellor used the definition of marital

property found in *Hemsley*, which states that

> assets acquired or accumulated during the course of a marriage are
> subject to equitable distribution unless it can be shown by proof
> that such assets are attributable to one of the party's separate
> estates prior to the marriage or outside the marriage. [W]e define
> marital property for the purpose of divorce as being any and all
> property acquired or accumulated during the marriage.

*Hemsley*, 639 So.2d at 914. All of the assets at issue in the divorce were assets acquired during

Gary and Sharon's marriage. The fact that Gary was the primary breadwinner of the family

does not make the assets his separate assets. "[F]or divorce purposes the contributions and

efforts of the marital partners whether economic, domestic or otherwise are of equal value."

*Waring*, 747 So.2d at 255(quoting *Hemsley*, 639 So.2d at 915).

¶33. In dividing the assets equitably, the chancellor applied the *Ferguson* factors which

include:

> (1) Substantial contribution to the accumulation of the property
> and further the following in determining contribution: (a) direct or
> indirect economic contribution to the acquisition of the property;
> and (b) contribution to the stability and harmony of marital and
> family relationships as measured by quality and quantity of time
> spent on family duties and duration of marriage; and (c)
> contribution to education, training or other accomplishments
> bearing on the earning power of the spouse accumulating assets;
>
> (2) The degree to which each spouse has expended, withdrawn or
> otherwise disposed of marital assets and any prior distribution of
> such assets by agreement, decree, and otherwise; (3) The market
> value and emotional value of the assets subject to distribution;
> (4) The value of assets not ordinarily, absent equitable factors to
> the contrary, subject to such distribution, such as property brought

to the marriage by the parties and the property acquired by inheritance or inter vivos gift by or to an individual spouse;
(5) Tax and other economic consequences, and contractual or legal consequences to third parties of the proposed distribution;
(6) The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
(7) The needs of the parties for financial security with due regard to the combination of assets, income, and earning capacity; and
(8) Any other factor which in equity should be considered.

***Ferguson v. Ferguson***, 639 So.2d 921, 928 (Miss. 1994).

¶34.    The chancellor made factual determinations on each element as supported by the evidence presented at trial. His fact finding included:

(1) Both Gary and Sharon made equally substantial contribution to the accumulation of marital property.  Gary as the breadwinner provided for the direct accumulation of the assets, while Sharon as the homemaker and child rearer provided substantial indirect contribution to the accumulation of marital assets.  Sharon provided Gary with the time and support needed to grow and strengthen his practice.  Sharon and the children supported Gary in his career and education through their moves from state to state so that Gary could get the specialty training and career opportunities he needed.

(2) Sharon cashed the $40,000 IRS check prior to the separation, and Gary attempted to transfer his business interests before separation to one of his partners.  The chancellor declined to find wilful disposal, dissipation, or expending of marital assets.

(3) The market value and emotional value of the marital assets; the emotional attachment of Sharon to the liquid assets that could be used to procure a home and security for the future;

15

and Gary's attachment to the home and business assets (which are not liquid). During trial Gary indicated an unwillingness to share or split the home or business assets with his Sharon.

(4) No evidence of inherited property or acquisition of property by gift was found.

(5) The tax and other economic consequences and contractual or legal consequences to third parties of the proposed distributions by the court were considered. Gary was granted the right to claim the children as dependents on his tax returns. Some of the unliquidated assets that subject Gary to taxes if liquidated were assets to which he testified that he is unwilling to share or split.

(6) The chancellor noted his consideration of how division of property could be used to eliminate periodic alimony to reduce friction between the parties, but did not give a detailed explanation.

(7) The needs of the parties in this case for financial security, giving regard to the combination of assets, income, and earning capacity of each party were considered. Gary is the only party with income. Gary's earning capacity far outweighs Sharon's.

(8) The chancellor did not indicate his consideration of any other relevant factors in making his determination.

¶35.    The Court of Appeals has upheld a 50/50 marital asset division, $20,000 lump sum alimony, and an award of $2,000 of monthly periodic alimony. *Long v. Long*, 734 So.2d 206, 208 (Miss. Ct. App. 1999). Here, the chancellor divided the assets 50/50. Gary's main complaint is that his adulterous conduct likely influenced the chancellor's decision of marital

16

assets whereby he was given those assets that are non-liquid and subject to harsh tax penalties if liquidated.

¶36. There is no evidence in the record to indicate that the chancellor weighed too heavily on the adulterous conduct in making the property division. In fact, there is very little reference to the adulterous conduct at all by the chancellor. His only remarks were in his determination of periodic alimony (not lump sum alimony or property division) in which he stated that he did not wish to punish Gary for his conduct.

¶37. Additionally, Gary argues that the chancellor erred in his division of the assets due to the harsh tax consequences placed on him by the division. There is sufficient evidence in the record to explain the unequal tax consequences of the property division. First, Gary was granted the right to claim his children as dependents on his tax returns. Second, Gary requested many of the non-liquid assets which include: (1) 27.5% ownership in RCG Southhaven, LLC; (2) 15% ownership in RCG Brandon, LLC; (3) 50% ownership in Diversified Renal Group; and (4) the marital residence. Third, Gary has a steady stream of income which decreases the likelihood he will need to liquidate assets in order to provide cash. Sharon, on the other hand, has no income and is likely to need to liquidate some of her assets in order to secure a new residence and other necessities. It was also shown that for Sharon to gain employment in her chosen field, she will need extensive re-certification of 1,000 hours or more. During the period before re-employment, Sharon will have a more likely need to liquidate assets in order to provide for herself and the children.

¶38. There is no evidence that the chancellor abused his discretion in his 50/50 division of the marital assets.

## CONCLUSION

¶39. The chancellor did not err in granting the divorce on the ground of adultery, awarding periodic and lump sum alimony, and dividing the marital property. Sufficient evidence was presented by Sharon to support the adultery finding. The chancellor weighed the factors for providing periodic and lump sum alimony and gave a detailed explanation for the finding. Additionally, the chancellor weighed the factors for providing for an equitable distribution and gave a detailed explanation for that determination. Accordingly, the chancellor's judgment and order denying the motion for new trial, or in the alternative, motion to reconsider are affirmed.

¶40. **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, DIAZ, EASLEY AND CARLSON, JJ., CONCUR. COBB, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. GRAVES, J., NOT PARTICIPATING.**