# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01735-COA

JAN DYKES                                                           APPELLANT

v.

EVERETT G. DYKES                                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/07/2014 |
| TRIAL JUDGE: | HON. WILLIAM R. BARNETT |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER RANDALL PURDUM |
| ATTORNEY FOR APPELLEE: | MICHAEL DUANE MITCHELL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | APPELLEE ORDERED TO PAY $7,042. APPELLEE GRANTED JUDGMENT OF DIVORCE ON GROUND OF ADULTERY. APPELLEE ORDERED TO PAY $800 PER MONTH FOR TWO YEARS AS REHABILITATIVE ALIMONY, TO BE APPLIED TOWARD THE $7,042. AS PART OF DIVISION OF ASSETS, APPELLEE ORDERED TO TRANSFER TO APPELLANT THE MARITAL HOME WITH ALL ADJOINING LAND. APPELLEE FOUND RESPONSIBLE FOR INDEBTEDNESS ENCUMBERING SAID PROPERTY. |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND REMANDED IN PART - 05/10/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND ISHEE, JJ.**

**LEE, C.J., FOR THE COURT:**

## FACTS AND PROCEDURAL HISTORY

¶1.    Jan and Everett Dykes were married on July 3, 1987, in Covington County,

Mississippi, and lived together until January 1, 2006, when they finally separated.

¶2. On March 14, 2006, Jan filed for divorce on the fault ground of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. Jan also petitioned for separate maintenance in the event the divorce was not granted.[1] On August 20, 2009, Jan amended her complaint to include the additional fault ground of uncondoned adultery. In his counter-complaint for divorce, Everett asserted the fault ground of adultery or, in the alternative, irreconcilable differences. On May 11, 2010, the chancery court dismissed Everett's counter-complaint and granted Jan's motion to withdraw fault grounds. The chancery court then awarded Jan separate maintenance.

¶3. In November 2010, Everett was laid-off from his job due to lack of work. Everett accepted another job, which resulted in a decrease in his income. Consequently, Everett fell behind on his payments under the separate-maintenance order.

¶4. In February 2011, Jan filed a petition for citation of contempt against Everett, and the chancery court continued the case and ordered Everett to make payments each month until the date set for trial. In June 2012, Jan filed another petition for citation of contempt against Everett. This time, the chancery court entered a judgment of contempt.

¶5. On May 14, 2013, the chancery court dismissed the divorce matter.

¶6. On May 31, 2013, Everett filed a motion to modify the final decree of separate maintenance. Everett simultaneously filed a complaint for divorce on the fault ground of adultery. The two actions were consolidated.

---

[1] A temporary decree of separate maintenance was issued, and several continuances were granted throughout this case.

¶7.    When trial began in March 2014, Everett was—again—in arrears under the separate-maintenance order.  Jan asserted that Everett's unclean hands barred him from proceeding with his modification and divorce actions.  However, the chancellor proceeded without making a ruling.

¶8.    Jan testified that she had sexual relationships with three men during the parties' marriage.  Similarly, Everett testified that he had a sexual relationship with another woman during the parties' marriage.  However, Everett stated that Jan's affairs were "the reason [he wanted] a divorce."

¶9.    Jan made a motion to dismiss based on the defense of recrimination.  After argument from both sides, the chancellor denied Jan's motion and ultimately awarded Everett a divorce on the ground of adultery.

¶10.   In the second part of the trial—division of property and alimony—the chancery court found that Everett was $7,042 in arrears and ordered Everett to pay rehabilitative alimony of $800 per month for two years, to be applied toward the arrearage of $7,042.  The chancery court also ordered Everett to transfer the parties' marital home with all adjoining land as lump-sum alimony to Jan.  Furthermore, Everett was responsible for all debts encumbering said land.  Everett's counsel requested an analysis of the *Ferguson*[2] factors, but the chancellor declined to do so from the bench.  Subsequently, the chancellor entered a written opinion "to expand [his] bench opinion [and] to include the *Ferguson* and *Armstrong*[3]

---

[2] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

[3] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

factors[.]"

¶11. Jan filed a motion for a new trial and a motion to alter or amend the judgment, which the chancery court granted in part and denied in part. The chancery court stated that the marital home should have been classified in the division of assets and not as lump-sum alimony.

¶12. Jan appeals, asserting that the chancellor erred in: (1) allowing Everett to proceed with unclean hands; (2) failing to make findings of fact; (3) failing to deny the divorce based on recrimination; (4) failing to classify the marital property; (5) misapplying the *Ferguson* factors; and (6) misapplying the *Armstrong* factors.

## STANDARD OF REVIEW

¶13. "In domestic-relations cases, we 'will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard.'" *Artz v. Norris*, 163 So. 3d 983, 987 (¶10) (Miss. Ct. App. 2015) (quoting *In re Dissolution of Marriage of Wood*, 35 So. 3d 507, 512 (¶8) (Miss. 2010)). "We review questions of law de novo." *Id.*

## DISCUSSION

### I. Clean-Hands Doctrine

¶14. In her first issue, Jan claims the chancellor erred in granting Everett relief due to his unclean hands. Jan argues that because Everett was in arrears under the separate-maintenance order, his hands were unclean, thus prohibiting him from coming into the chancery court to seek relief.

¶15. "The doctrine of clean[ ]hands provides that 'he who comes into equity must come with clean hands.'" *Andres v. Andres*, 22 So. 3d 314, 320 (¶25) (Miss. Ct. App. 2009) (quoting *Cook v. Whiddon*, 866 So. 2d 494, 498 (¶13) (Miss. Ct. App. 2004)). A complaining party may not obtain equitable relief "when he is guilty of willful misconduct in the transaction at issue." *Id.* at (¶16). Everett came into the court with unclean hands. *See id.* at 321 (¶29). However, he did not leave with unclean hands. *See id.* The chancellor entered a judgment against Everett for $7,042, which cleansed Everett's hands. *See id.* This issue is without merit.

## II. Findings of Fact

¶16. In her second issue, Jan claims the chancellor erred in failing to make findings of fact when he granted a divorce on the ground of adultery.

¶17. "A party must establish his or her claim of adultery by clear and convincing evidence." *McClelland v. McClelland*, 879 So. 2d 1096, 1098 (¶12) (Miss. Ct. App. 2004) (citing *Mitchell v. Mitchell*, 767 So. 2d 1037, 1040 (¶5) (Miss. Ct. App. 2000)). "There must be clear and convincing evidence both of an adulterous inclination and a reasonable opportunity to satisfy that inclination." *Id.* (quoting *Mitchell*, 767 So. 2d at 1040 (¶5)). "Adultery may be proven by admissions or other evidence." *Id.* (citing *Holden v. Frasher-Holden*, 680 So. 2d 795, 799 (Miss. 1996)). "Where allegations of adultery are raised as grounds for divorce, the chancellor is required to make findings of fact." *Holden*, 680 So. 2d at 798 (citing *McAdory v. McAdory*, 608 So. 2d 695, 699 (Miss. 1992)).

¶18. From the bench, the chancellor stated: "Based on the testimony of the parties, the

[c]ourt does find that Everett Dykes is entitled to [a] [d]ivorce from Jan Dykes on the grounds of uncondoned adultery." Later, in the written final judgment, the chancellor stated: "Jan Dykes, *by her own admission* and through other evidence presented, has been guilty of uncondoned adultery. Everett G. Dykes is hereby granted a divorce . . . from Jan Dykes on the grounds of uncondoned adultery." (Emphasis added).

¶19. The chancellor made a specific finding of fact when he stated that the basis for granting the divorce was—in part—"[Jan's] own admission." This issue is without merit.

### III. Recrimination

¶20. In her third issue, Jan claims the chancellor erred by failing to deny the divorce based on the defense of recrimination. "The doctrine of recrimination is founded on the basis that the equal guilt of a complainant bars his/her right to divorce, and the principal consideration is that the complainant must come into court with clean hands." *Ware v. Ware*, 7 So. 3d 271, 273 (¶7) (Miss. Ct. App. 2008) (quoting *Cherry v. Cherry*, 593 So. 2d 13, 18 (Miss. 1991)).

¶21. Mississippi Code Annotated section 93-5-3 (Rev. 2013) provides: "If a complainant or cross-complainant in a divorce action shall prove grounds entitling him to a divorce, *it shall not be mandatory on any chancellor to deny such party a divorce,* even though the evidence might establish recrimination on the part of such complainant or cross-complainant." (Emphasis added).

¶22. Jan appears to concede that it was within the chancellor's discretion not to deny the divorce based on recrimination. However, Jan launches into a discussion about lack of proof that she caused the separation since the adultery was committed after her separation from

Everett. Jan relies on *Boutwell v. Boutwell*, 829 So. 2d 1216 (Miss. 2002), in support of her argument. In *Boutwell*, the supreme court cited to *Garriga v. Garriga*, 770 So. 2d 978 (Miss. Ct. App. 2000), where this Court held that when both parties are seeking a divorce, "the chancellor must determine which of the parties will be granted the divorce by determining which party's conduct was the cause of the deterioration of the marital relationship." *Boutwell*, 829 So. 2d at 1224 (¶41). Here, only Everett is seeking a divorce. Therefore, the above rule does not apply. Furthermore, this Court has held that "[t]here is no requirement that the adultery precede the spouses' separation." *Lister v. Lister*, 981 So. 2d 340, 344 (¶29) (Miss. Ct. App. 2008) (citing *Curtis v. Curtis*, 796 So. 2d 1044, 1051 (¶31) (Miss. Ct. App. 2001)).

¶23. Even though Everett admitted to having an affair, the chancellor was not required to deny him a divorce when he had proven that Jan had also committed adultery. *See Ware*, 7 So. 3d at 273 (¶9). This issue is without merit.

## IV. Equitable Distribution

¶24. We consolidate Jan's remaining issues as whether the chancellor erred in dividing the marital property. It is well established:

> First, the character of the parties' assets, i.e., marital or non-marital, must be determined pursuant to *Hemsley*. The marital property is then equitably divided, employing the *Ferguson* factors as guidelines, in light of each part[y's] non-marital property. If there are sufficient marital assets which, when equitably divided and considered with each spouse's non-marital assets, will adequately provide for both parties, no more need be done. If the situation is such that an equitable division of marital property, considered with each party's non-marital assets, leaves a deficit for one party, then alimony based on the value of non-marital assets should be considered [pursuant to *Armstrong*].

*Lauro v. Lauro*, 847 So. 2d 843, 848 (¶13) (Miss. 2003) (internal citation omitted).

¶25.    Jan claims that the chancellor erred in failing to establish a line of demarcation.  Jan also claims that the chancellor erred in failing to classify the parties' property as marital or nonmarital.

¶26.    "Assets acquired after an order for separate maintenance should be considered the separate property of the parties, absent a showing of either (1) contribution to the acquisition of the asset by the other spouse . . . or, (2) acquisition of the asset through the use of marital property."  *Goodwin v. Goodwin*, 758 So. 2d 384, 386 (¶7) (Miss. 1999).  Furthermore, "a failure to classify property does not automatically result in reversible error if the division of property is fair."  *Branch v. Branch*, 174 So. 3d 932, 944 (¶45) (Miss. Ct. App. 2015) (citing *Kimbrough v. Kimbrough*, 76 So. 3d 715, 721 (¶27) (Miss. Ct. App. 2011)).  Although the chancellor did not specifically state that the separate-maintenance order was the line of demarcation in this case, a review of the record indicates that this is the exact line that the chancellor used.  Property acquired after the separate-maintenance order was considered separate—or nonmarital.

¶27.    Jan lists the parties' assets as follows:

1.    The marital home;

2.    The adjoining lot next to the marital home;

3.    Ford F-150 truck;

4.    Trailer park in Jones County;

5.    Lincoln Town Car automobile;

6.    Nissan automobile;

7.    Jaguar automobile;

8.    Everett's retirement account;

9.    Everett's family land.

¶28.   Jan concedes that the chancellor addressed the marital home, the adjoining lot next to the marital home, and the Ford F-150, but claims that the chancellor erred in not classifying the other assets. Everett acquired the trailer park, Nissan automobile, and Jaguar automobile, and inherited his family's land after the separate maintenance order was entered. Everett testified that he bought the Lincoln Town Car before the separate-maintenance order; however, the title for the Lincoln Town Car was still in his father's name. Because Everett contributed to his retirement account during the parties' marriage, this asset could be either marital or nonmarital property. Therefore, we reverse and remand for a classification of this asset.

¶29.   Jan lists the parties' debts as follows:

1.    The marital-home mortgage;

2.    Priority-One bank credit line;

3.    Internal Revenue Service;

4.    Ford F-150 truck note;

5.    Community Bank loan;

6.    Community Bank loan;

7.    Bank of West loan;

8.    Sheffield lawnmower loan;

9.    Sam Smith promissory note.

¶30.    Again, Jan conceded that the chancellor addressed the marital home and the Ford F-150, but claims that the chancellor erred in not classifying the other debts. Everett incurred the IRS debt as a result of his trailer park, which was acquired after the separate-maintenance order. Everett also secured one of the Community Bank loans to pay for his trailer park. And Everett secured the other Community Bank loan to pay Jan under the separate-maintenance order. Everett secured the Bank of West loan for his trailer, which was acquired after the separate-maintenance order. And Everett secured the Sam Smith promissory note, which he also used to pay Jan under the separate-maintenance order. Everett indicated that the Sheffield-lawnmower loan was his own debt. However, the Priority-One Bank credit line, which was actually two credit cards that Everett told Jan to max out for their child's college tuition, could be either marital or nonmarital property. Therefore, we reverse and remand for a classification of this debt.[4]

¶31.    We reverse and remand for a classification of Everett's retirement account and the Priority-One debt. The chancellor should then divide the marital property equitably, employing the *Ferguson* factors as guidelines. If the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered pursuant to *Armstrong*. *See Daniels v. Daniels*, 950 So. 2d 1044, 1046 (¶10) (Miss. Ct. App.

_____

[4] Jan did not list two credit cards—Citi and Bank of America. However, Jan testified that these credit cards were her debts.

2007) (because this Court remanded for an analysis of the applicable *Ferguson* factors, we also remanded the issue of alimony); *see also Stevens v. Stevens*, 924 So. 2d 645, 648 (¶7) (Miss. Ct. App. 2006) ("Alimony is considered only after the marital property has been equitably divided and the chancellor determines one spouse has suffered a deficit.").[5]

¶32.   **THE JUDGMENT OF THE COVINGTON COUNTY CHANCERY COURT IS AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEE.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**

---

[5] The chancellor awarded rehabilitative alimony to Jan.  We note that "'[r]ehabilitative periodic alimony' is not intended as an equalizer between the parties." *Lauro*, 847 So. 2d at 849 (¶15) (quoting *Hubbard v. Hubbard*, 656 So. 2d 124, 130 (Miss. 1995)).