# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-00736-SCT

*CLIFTON EARL GRANT*

*v.*

*SANDRA MOORE GRANT*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/19/1999 |
| TRIAL JUDGE: | HON. WILLIAM HALE SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | RICHARD H. YOUNG |
| ATTORNEY FOR APPELLEE: | PAT DONALD |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 08/24/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/15/2000 |

**EN BANC.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

¶1. On December 30, 1982, Clifton Earl Grant and Sandra Moore Grant married. Two children were born of that marriage; Charles Patrick Grant, a male child, whose date of birth is February 2, 1985, and Shellonda Patrice Grant, a female child, whose date of birth is April 21, 1993. On June 30, 1998, the Chancery Court of the First Judicial District of Hinds County entered an interlocutory order in response to a complaint filed by Sandra for child custody and support. In that order, the chancery court awarded temporary legal and physical custody to Sandra and ordered Clifton to pay $500 per month child support. Clifton then filed an Answer and Counterclaim for Divorce, wherein he sought physical and legal custody of Patrick and requested the court award him a divorce based on constructive desertion grounds.

¶2. On March 22, 1999, the chancery court entered its Final Judgment for Child Custody and Support and Denying Divorce. In the judgment, the chancellor granted physical and legal care, custody and control of both Patrick and Shellonda to their mother, Sandra, and ordered Clifton to pay Sandra $500 per month child support. The chancellor also denied Clifton's counterclaim for divorce, stating that Clifton has not "shown by clear and convincing evidence his entitlement to a divorce on the grounds of constructive desertion." Additionally, the chancellor issued an order awarding attorney fees, in the amount of $2,942.00, to Sandra. Aggrieved by the decision of the chancery court, Clifton timely perfects this appeal.

## STANDARD OF REVIEW

¶3. The findings of a Chancellor will not be disturbed or set aside by this Court on appeal unless the decision made by the trial court was manifestly wrong and not supported by substantial, credible evidence,

or unless an erroneous legal standard was applied. *Pearson v. Pearson*, 761 So. 2d 157, 162 (Miss. 2000).

## DISCUSSION

## I.

## WHETHER THE CHANCELLOR ERRED IN FAILING TO MAKE A SPECIFIC FINDING ON THE RECORD THAT THE APPLICATION OF THE STATUTORY GUIDELINES WOULD BE UNJUST OR INAPPROPRIATE

¶4. Clifton asserts that the chancery court erred by awarding Sandra $500 per month child support and contends that this amount exceeds the statutory guidelines set forth in Miss. Code Ann. § 43-19-101(1) (Supp. 1999). That statute provides that there "shall be a rebuttable presumption in all judicial or administrative proceedings regarding the awarding or modifying of child support awards in this state." Miss. Code Ann. § 43-19-101(1). The statute also states that a parent of two children shall pay 20% of his or her adjusted gross income for child support, absent a written or specific finding on the record that application of such guideline would be unjust or inappropriate. Miss. Code Ann. § 43-19-101(1)(2). Furthermore, Miss. Code Ann. § 43-19-103(a) provides that deviation from the statutory guideline is appropriate when "extraordinary medical, psychological, educational or dental expenses" are involved.

¶5. In the present case, conflicting evidence was presented as to the amount of Clifton's gross income. After taking all evidence presented into consideration, the chancellor found Clifton's adjusted gross income to be $2,427 per month. The chancellor then applied the statutory guidelines, which yielded a $485.50 per month child support payment. The chancellor awarded $500 per month child support and explained the upward deviation was "made necessary by reason of the unusual medical expenses" that both children incur.

¶6. When a chancellor chooses not to follow the guidelines, this Court has enforced the statutory requirement that the chancellor make an on-the-record determination that the guidelines do not apply. *Clausel v. Clausel*, 714 So. 2d 265, 267 (Miss. 1998). In the present case, the chancellor did make an on-the-record finding to support his slight deviation from the statutory guidelines. Patrick suffers from a severe and chronic asthma condition, which places him in and out of the hospital on a regular basis. Shellonda suffers from atopic dermatitis and asthma. Moreover, Sandra pays for the children's health insurance and all related medical bills. Taking the above factors into consideration, it can hardly be said that the chancellor erred by awarding $14.50 per month above the statutory child support guidelines. The chancellor's decision was supported by substantial, credible evidence and was not manifestly wrong. Furthermore, the chancellor made a specific on-the-record finding to support his decision. Accordingly, this Court finds this issue to be without merit.

## II.

## WHETHER THE CHANCELLOR ERRED BY ORDERING APPELLANT TO PAY AN AMOUNT OF CHILD SUPPORT WHICH IS IN EXCESS OF THE STATUTORY GUIDELINES AS SET FORTH IN MISS. CODE ANN. § 43-19-101

¶7. Clifton asserts that the chancellor erred in determining the amount of his monthly gross income, which causes his child support obligation to exceed the 20% guideline provided in Miss. Code Ann. § 43-19-101. Despite a request by counsel and the court, Clifton never provided a W-2 or a pay stub during the trial.

Likewise, Clifton provided no information about his income when he responded to Sandra's request for production of documents. The only information provided concerning Clifton's income was through his own testimony that he made "about $31,000 a year" working for the Veterans Administration.

¶8. Clifton did provide, however, seven bank statements. These bank statements indicated deposits which totaled $3,100 over and above his payroll and income tax refund. Clifton did assert that $1,179 of the deposit could have been from money he borrowed from Norwest Financial. Nonetheless, Clifton never provided any explanation for the extra income and vehemently denied that the unexplained extra money came from working at his mother's business. Sandra, however, testified that Clifton did receive money from the family business and stated that Clifton brought home "between four hundred and six hundred per month, at least." Clifton received an average of $600 per month above his alleged income for the five months immediately preceding trial, yet offered little or no explanation for the additional money. Consequently, the chancellor included the extra unexplained income in the child support calculation.

¶9. With respect to the chancellor's finding, this Court can not find the decision to include the additional unexplained income to be clearly erroneous. "The chancellor, being the only one to hear the testimony of witnesses and observe their demeanor, is the sole authority for determining the credibility of the witnesses." *Madden v. Rhodes*, 626 So.2d 608, 616 (Miss.1993). This Court will not replace the chancellor's judgment with its own. *Id.* at 616. Accordingly, this Court finds no manifest error occurred when the chancellor included the unexplained $600 per month deposits in the computation of child support.

### III.

### WHETHER THE COURT ERRED BY DENYING APPELLANT A DIVORCE FROM APPELLEE ON THE GROUNDS OF CONSTRUCTIVE DESERTION

¶10. Clifton asserts the chancellor erred by not awarding him a divorce based on the constructive desertion. In *Day v. Day*, 501 So. 2d 353, 356 (Miss. 1987), this Court described constructive desertion as follows:

> If either party, by reason of such conduct on the part of the other as would reasonably render the continuance of the marital relationship unendurable, or dangerous to life, health or safety, is compelled to leave the home and seek safety, peace and protection elsewhere, then the innocent one will ordinarily be justified in severing the marital relation and leaving the domicile of the other, so long as such conditions shall continue, and in such case the one so leaving will be not guilty of desertion. The one whose conduct caused the separation will be guilty of constructive desertion and if the condition is persisted in for a period of one year, the other party will be entitled to a divorce.

In the present case, Clifton contends that there was "no marriage" and "no relationship" between himself and Sandra due to their inability to communicate and compromise. Clifton contends that the problems began as early as a year into the marriage. Likewise, both Sandra and Clifton testified that they had separated once earlier in their marriage.

¶11. Sandra, however, contends that Clifton left because he was having an affair with another woman. Clifton does not deny this five-year affair, nor does he deny that he began the affair about a year prior to his leaving the marital home. Nonetheless, contrary to Sandra's testimony, Clifton argues that his adulterous affair did not cause their separation. Clifton also admits he was never physically abused by Sandra and admits that he was the one who left the marital home.

¶12. The chancellor found that Clifton failed to prove constructive desertion and denied Clifton's divorce request on those grounds. This Court finds no manifest error in the chancellor's decision. Clifton had a five-year adulterous relationship, which commenced one year prior to *his* leaving the marital home. There is no evidence in the record to conclude that his life was unendurable, dangerous or that his health and safety were threatened by his staying in the marital home. The chancellor did not commit manifest error by denying Clifton a divorce based on constructive desertion grounds. Therefore, this issue is without merit.

## IV.

### WHETHER THE COURT ERRED IN GRANTING ATTORNEY FEES TO THE APPELLEE

¶13. Clifton asserts that the chancellor erred in granting Sandra $2,942 for her attorney fees. Specifically, Clifton contends that he makes only $31,000 per year, while Sandra makes $34,633.74. Consequently, Clifton argues that Sandra has a higher income and should, therefore, be able to pay her own attorney fees. This Court disagrees.

¶14. "We recognize that the matter of determining attorneys fees in divorce cases is largely entrusted to the sound discretion of the trial court." *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982). "Attorney fees are appropriate only where a party is financially unable to pay them." *Monroe v. Monroe*, 745 So. 2d 249, 253 (Miss. 1999). Furthermore, "the fee should be fair and should only compensate for services actually rendered after it has been determined that the legal work charged for was reasonably required and necessary." *Id.* (quoting *Dunn v. Dunn*, 609 So. 2d 1277, 1286 (Miss. 1992)). In the present case, neither this Court nor the chancery court can say with absolute certainty that Sandra has a higher income than Clifton. Despite repeated requests by counsel and the chancellor, Clifton never produced any documents, other than seven bank statements, for the chancery court to utilize in determining the respective incomes of the parties. Although Clifton testified that he made "about $31,000" per year, he never produced any documentation to support this figure.

¶15. Furthermore, even if this Court were to assume that Sandra has a higher income than Clifton, we must then consider whether she is able to pay the attorney fees. Sandra and Clifton separated in 1995. In 1996, Clifton paid Sandra approximately $1,000 in child support. In 1997, Clifton paid Sandra approximately $200 in child support. In 1998, Clifton paid no child support until the temporary order was issued in July. Sandra, on the other hand, pays for the children's insurance, private school tuition, food, clothing and shelter. Moreover, both children incur great medical expenses, for which she has assumed financial responsibility. In 1998, Patrick spent over 125 days in the hospital and continues to be hospitalized on a regular basis. Shellonda's skin disorder often requires medical attention from the sores and infections which result. The record indicates that Sandra has had, for all practical purposes, the sole responsibility of supporting the children.

¶16. With the exception of the monetary amounts noted above, Clifton has not contributed to the financial well-being of his children. Sandra's *gross* monthly income is approximately $2,700. According to her financial declaration, her combined total expenses each month are $3,922. According to Clifton's financial declaration, his *gross* monthly income is $2,073.60 and his combined total expenses each month are $1,504.

¶17. Sandra's attorney, Pat Donald, testified at trial that Sandra "made it clear going in that she couldn't pay me. She didn't mislead me in the least. She has not paid any amount on her fees so far." Donald further

testified that he has been practicing for over 15 years and had done thousands of domestic cases. Donald charged a reduced rate of $95 per hour for his work and provided a statement outlining his time spent on the case. Likewise, Sandra testified that it would be "a hardship for her" to pay the fees. The total amount of attorney fees incurred was $2,942.

¶18. Taking the above factors into consideration, this Court finds no manifest error on the part of the chancellor. Although it is unclear who makes the higher income, it is clear from the record that Sandra incurs much greater expenses for the care and welfare of her children and, as such, has little or no disposable income left each month. Sandra is not able to pay the attorney fees, which appear to be both fair and reasonable. Therefore, this issue is without merit.

## V.

### WHETHER THE COURT SHOULD AWARD APPELLEE A REASONABLE SUM FOR HER ATTORNEY FEES INCURRED IN THE APPEAL PROCESS

¶19. Sandra asserts that she is unable to pay her attorney for the services rendered in connection with her defense of this appeal, and she requests this Court grant her a reasonable sum for the attorney fees incurred. This Court has generally awarded attorney's fees on appeal in the amount of one-half of what was awarded in the lower court. *Monroe v. Monroe*, 745 So. 2d 249, 253 (Miss. 1999). Therefore, Sandra is entitled to attorney's fees on appeal in the amount of one-half of what she was awarded in the lower court. *See Clements v. Young*, 481 So. 2d 263, 271 (Miss. 1985); *Klumb v. Klumb*, 194 So. 2d 221, 225 (Miss. 1967); *Shorter v. Shorter*, 740 So. 2d 352, 358 (Miss. Ct. App. 1999). Additionally, Sandra is entitled to the statutory penalty of 15% on her award of attorney's fees in the lower court, as set out in our recent case of *Murray v. Murray*, No. 98-CT-00471-SCT, 2000 WL 19938, at *2 (¶8) (Miss. Jan. 13, 2000).

## CONCLUSION

¶20. The judgment of the Chancery Court of the First Judicial District of Hinds County awarding child support and denying divorce is affirmed.

¶21. **AFFIRMED.**

> **PITTMAN AND BANKS, P.JJ., SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. DIAZ, J., CONCURS IN PART. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J.**
>
> McRAE, JUSTICE, DISSENTING:

¶22. Sandra Moore Grant ("Sandra") did not file for divorce or separate maintenance, but appears to have proceeded to file for of custody of their minor children and child support under Miss. Code Ann. § 93-11-65 (Supp. 1999). The chancellor granted joint custody with physical custody with Sandra and awarded her attorney's fees even though she made more money than her husband. Sandra failed to show that she had any inability to pay her attorney's fees. Accordingly, I dissent.

¶23. This was a proceeding apparently just for custody and child support, and there was no necessity shown for attorney's fees. This is not a contempt proceeding. This is not to enforce a previous decree, but

simply to establish custody and the amount of support. This being the case, Sandra is not entitled at this juncture to attorney's fees. In particular, she works, has the ability to pay, and her income of $34,633.74 is larger than her husband's income. In fact, when questioned about her bill by her attorney, she admitted that she would pay the bill.[1] The chancellor made no finding that she was unable to pay her attorney. This Court recently held that "[a]ttorney's fees should not be awarded unless the chancellor finds that the party requesting attorney's fees can establish an inability to pay." *Overstreet v. Overstreet*, 692 So.2d 88, 93 (Miss. 1997). We went on to hold that attorney's fees were not appropriate where the party seeking fees argued "throughout her brief that she has experienced serious financial stress, but there is no finding in the record that [she] was unable to pay her attorney's fees." Though Sandra has argued that it would be a hardship for her to pay the attorney's fees, she admits that she will pay them. Also, neither of the chancellor's orders awarding attorney's fees makes a finding that Sandra is unable to pay. This Court has also examined the "relative financial ability of the parties," when considering whether to award attorney's fees. *McKee v. McKee*, 418 So.2d 764, 767 (Miss. 1982). The record clearly indicates that Sandra's income exceeds Clifton's income of $31,000. It is clear that the chancellor committed manifest error in awarding attorney's fees. Accordingly, I dissent.

### DIAZ, J., JOINS THIS OPINION.

1. Her attorney asked: "If this court does not award you attorney's fees, will you at some point in time try to pay this bill?" She answered: "Yes, I will."