912 So.2d 1086 (2005)
Sherrie L. COCHRAN, Appellant
v.
Jeffrey L. COCHRAN, Appellee.
No. 2004-CA-00469-COA.
Court of Appeals of Mississippi.
October 18, 2005.
*1087 Jason D. Herring, attorney for appellant.
C. Michael Malski, Amory, attorney for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Sherrie Cochran filed a complaint for divorce from Jeffrey Cochran on the grounds of habitual cruel and inhuman treatment. Sherrie's evidence consisted of her own testimony and the testimony of one of her former co-workers. Jeffrey denied all of Sherrie's allegations except to admit that he occasionally lost his temper and called her names. The chancellor dismissed *1088 Sherrie's complaint for divorce, finding that Sherrie did not present sufficient proof. Sherrie appeals, raising the following issues:
I. WHETHER THE CHANCELLOR ERRED IN REQUIRING CORROBORATION OF SHERRIE'S TESTIMONY
II. WHETHER THE CHANCELLOR ERRED IN REFUSING TO CONSIDER EVIDENCE OF CRUEL AND INHUMAN TREATMENT THAT OCCURRED BEFORE THE MARRIAGE
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Sherrie Cochran and Jeffrey Cochran began living together in 1999 and were married on November 21, 2001. Sherrie left the marital home on August 21, 2002. On March 11, 2003, Sherrie filed for divorce on the grounds of habitual cruel and inhuman treatment. The matter was heard on October 30, 2003. The evidence consisted of testimony from Sherrie, Jeffrey, and Brandy McClung Cowley, one of Sherrie's former co-workers.
¶ 4. Sherrie testified that Jeffrey had engaged in a series of acts which she considered to be cruel and inhuman treatment. She testified that Jeffrey threw spaghetti across the room on one occasion because it was too clumpy; he threw coffee across the kitchen because he was angry; and he threw chopped onions across the kitchen floor because he did not want them stored in the freezer. Sherrie stated that Jeffrey would frequently grow angry with her for not folding his socks correctly, not vacuuming her hair from the bathroom floor well enough, not watching the dog closely enough, not calling him on her way home from work, and not adjusting the seat in his truck properly. She also accused Jeffrey of destroying a gift she gave to him after returning home from a trip.
¶ 5. Sherrie also recalled a pattern of disparaging remarks Jeffrey made to her throughout the course of the relationship. Jeffrey would frequently call her stupid, an idiot, and a b____ and would make comments such as, "You just can't do anything right." She testified that these incidents would occur at least once a week.
¶ 6. Sherrie also testified as to the physical violence that happened in the home. She described "dots of purple" bruises that were left on her upper arms. She alleged that on one occasion Jeffrey threw her against a counter and choked her. She recalled that Jeffrey had been physically violent with her "two or three" times during the time they lived together.
¶ 7. Sherrie cited two specific instances in which Jeffrey threatened her life, with one instance that occurred while the parties were married. Sherrie testified that Jeffrey said he would kill her if he ever caught her with another man. Jeffrey maintained a large supply of loaded firearms near him at all times. He kept a gun with him in his truck, in each of the bedrooms, and in the middle of the living room.
¶ 8. Brandy Cowley testified that she had worked with Sherrie for approximately two years. Cowley testified that she observed bruises on Sherrie's arms "five or six times." Cowley described the bruises as looking like fingerprints, "like if you were to  if someone were to grab my arm and hold on." Cowley also discussed Sherrie's fearful demeanor and evasiveness when Cowley questioned her about the bruises. Sherrie's testimony showed that she stopped working with Cowley on July 1, 2001. Therefore, Cowley's testimony related to a time period before Jeffrey and Sherrie were married.
¶ 9. Jeffrey denied all of Sherrie's allegations, but he did acknowledge that he *1089 had a temper and he admitted that he had occasionally called her names. Jeffrey denied that Sherrie would have any reason to be afraid of him.
¶ 10. After hearing the evidence, the chancellor found that Sherrie had not presented sufficient evidence to support a divorce on the grounds of habitual cruel and inhuman treatment. As the chancellor acknowledged, "In Mississippi, it's very difficult to get a divorce unless you can get the other side to agree, unless you have got more violence than what you have here." Accordingly, the chancellor dismissed Sherrie's complaint for divorce.

ANALYSIS

I. WHETHER THE CHANCELLOR ERRED IN REQUIRING CORROBORATION OF SHERRIE'S TESTIMONY
¶ 11. Mississippi allows a chancellor to grant a divorce on the grounds of habitual cruel and inhuman treatment. Miss.Code Ann. § 93-5-1 (Rev.2004). Such treatment must be proven by a showing of conduct that either (1) endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or (2) is so unnatural and infamous as to make the marriage revolting to the nonoffending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance. Daigle v. Daigle, 626 So.2d 140, 144 (Miss.1993). A plaintiff must prove this ground by a preponderance of the credible evidence. Gardner v. Gardner, 618 So.2d 108, 113 (Miss.1993).
¶ 12. In Anderson v. Anderson, 190 Miss. 508, 200 So. 726, 727 (1941), the Mississippi Supreme Court held that a divorce on the ground of habitual cruel and inhuman treatment "will not be granted on the uncorroborated testimony of the complainant." The Anderson court further held that the corroboration requirement does not apply "in a case where, in its nature or owing to the isolation of the parties, no corroborating proof is reasonably possible." Id.
¶ 13. Sherrie claims that her case is an example of the cases in which the isolation exception should apply. The marital home is a farm that is located on a country road in Houlka, Mississippi. The nearest neighbor is approximately one half mile away. In addition, Jeffrey suffers from Post Traumatic Stress Syndrome, which causes Jeffrey to be extremely adverse to large crowds. Sherrie claims that the couple rarely left the home during the marriage due to Jeffrey's condition.
¶ 14. Sherrie's claim that she was secluded during the marriage is unsupported by the facts. Sherrie's testimony revealed that she was fully employed throughout the marriage and saw people on a daily basis while she was working. Furthermore, Jeffrey claimed that it was "not correct at all" that he and Sherrie stayed at the farm all the time. Jeffrey estimated that the couple left home once a week or twice per month, depending on Sherrie's work schedule.
¶ 15. The present case is not one in which the isolation exception should apply. The Anderson court made it clear that the isolation exception should apply in the rarest of circumstances.
And in those rare cases coming within the exceptional allowance, the cross-examination by the opposite party or by the court or both must be of such a searching nature, and that examination must be so thoroughly met in word and in demeanor by the complainant as to bring the facts clearly and undoubtedly within the statutory ground or grounds *1090 and also must be such as shall be sufficient to actually convince the chancellor clearly and conclusively that the asserted facts are true in all essential respects.
Id. The chancellor was correct in requiring Sherrie to corroborate her allegations of abuse.

II. WHETHER THE CHANCELLOR ERRED IN REFUSING TO CONSIDER EVIDENCE OF CRUEL AND INHUMAN TREATMENT THAT OCCURRED BEFORE THE MARRIAGE
¶ 16. Sherrie argues that the chancellor erred when he failed to consider evidence of incidents that occurred before the parties were married. She believes it was error for the chancellor to ignore the testimony of Cowley. She also claims error when the chancellor refused to consider an incident in which Jeffrey admitted to shooting Sherrie's pet goats, an incident that happened before the parties were married. Finally, she claims error when the chancellor interjected during Sherrie's direct examination and precluded Sherrie from testifying about alleged physical assaults that occurred before she married Jeffrey.
¶ 17. For a plaintiff to be granted a divorce on the grounds of habitual cruel and inhuman treatment, there must be a causal connection between the cruel treatment and the separation from the household, and it must be related in point of time to the separation. Fournet v. Fournet, 481 So.2d 326, 329 (Miss.1985); Harrison v. Harrison, 285 So.2d 752, 754 (Miss. 1973).
¶ 18. To demonstrate that the chancellor erred in refusing to consider evidence of habitual cruel and inhuman treatment before the parties were married, Sherrie cites Bland v. Hill, 735 So.2d 414 (Miss.1999). In Bland, the ex-husband filed an alienation of affections claim against his ex-wife's current husband.[1] The circuit court judge excluded all evidence of the ex-husband's affair with another woman because the affair occurred before the parties were married. The supreme court reversed and remanded, finding that the evidence of the ex-husband's affair was clearly relevant as to whether the new husband caused the alienation of affection. Id. at 419(¶ 23). The case sub judice is distinguishable, because the elements one must prove to be granted a divorce on the grounds of habitual cruel and inhuman treatment are different from the elements one must prove to establish a claim for alienation of affections.
¶ 19. Sherrie also cites Holladay v. Holladay, 776 So.2d 662 (Miss.2000). In Holladay, the chancellor excluded evidence of an incident in which the husband had severely beaten the wife, finding that it was not relevant because it occurred before the marriage. Id. at 675-76 (¶ 58). The supreme court reversed and remanded, because the wife did not claim that the incident was grounds for divorce, but instead argued that the incident was proof of her fear of her husband when he became angry and threatened her. Id. at 676 (¶ 61). In the present case, Sherrie attempted to introduce evidence of incidents occurring prior to the marriage for the sole purpose of proving that she was entitled to a divorce on the grounds of habitual cruel and inhuman treatment. In addition, unlike Holladay, the chancellor did not exclude the testimony of Cowley, Sherrie's sole corroborating witness. The chancellor *1091 never stated that Cowley's testimony was irrelevant. Rather, the chancellor held that the evidence presented as a whole was insufficient to allow a divorce on the grounds of habitual cruel and inhuman treatment. The chancellor was within his discretion in reaching this conclusion, and we affirm.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF CHICKASAW COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] The elements of an alienation of affections cause of action are: (1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) causal connection between such conduct and the loss. Kirk v. Koch, 607 So.2d 1220, 1222 (Miss.1992).