976 So.2d 957 (2008)
Bhavna KUMAR, Appellant
v.
Arvind M. KUMAR, Appellee.
No. 2006-CA-01140-COA.
Court of Appeals of Mississippi.
March 11, 2008.
*958 Mark A. Chinn, Jackson, Lee Ann Self Turner, William Matthew Thompson, attorneys for appellant.
Edward L. Pleasants, Columbus, Wilbur O. Colom, attorneys for appellee.
Before KING, C.J., CHANDLER, BARNES and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. The Chancery Court of Lowndes County entered an order denying Bhavna Kumar a divorce from her husband, Arvind M. Kumar. Aggrieved by the chancellor's order, Bhavna appeals. She asserts the following issues: (1) the chancellor's denial of a divorce was manifestly wrong, clearly erroneous, and against the overwhelming weight of the evidence, (2) the chancellor's denial of her motion for a new trial and/or to alter or amend judgment was manifestly wrong and clearly erroneous, and (3) the chancellor's decision to allow Arvind to file an untimely answer was manifestly wrong and clearly erroneous.
¶ 2. Finding that the chancellor erred in denying a divorce based on the grounds of *959 habitual cruel and inhuman treatment, we reverse.

FACTS
¶ 3. Arvind and Bhavna, who are of Indian descent, married on March 31, 1979, in the United Kingdom. The following year they moved to the United States. They eventually settled in West Point, Mississippi and became naturalized citizens. At the time of trial, the parties had a daughter who was twenty years old and a twenty-two-year-old son.
¶ 4. Bhavna filed for divorce from Arvind on July 30, 2004, in the Chancery Court of Lowndes County. She sought a divorce on the grounds of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. At the time, the chancellor entered a temporary restraining order against Arvind and set a hearing for temporary relief on August 9, 2004. The hearing was continued twice, but it was never held. Eventually, Bhavna withdrew her request for temporary support when the parties attempted to reconcile in September 2004.
¶ 5. After Bhavna returned home, the parties lived together until August 12, 2005, at which time, Bhavna left the marital home because of another abusive incident. She then filed an application for entry of default citing Arvind's failure to file an answer to the divorce complaint. In response, Arvind requested leave to file an answer to the original complaint, which the chancellor granted. Discovery was attempted, but after Arvind failed to comply with an order compelling discovery, the chancellor found that he had willfully disobeyed the court order and sanctioned him. The chancellor prohibited Arvind from calling any witnesses or admitting any documents at trial, thereby limiting him to cross-examination of Bhavna's witnesses. Because Arvind also failed to answer Bhavna's requests for admissions, the chancellor deemed them admitted.
¶ 6. For failing to comply with discovery, some of the facts the chancellor deemed admitted were as follows: (1) that Arvind committed adultery; (2) that Arvind physically abused, hit, punched, tried to strangle, used a belt to whip, and yelled at Bhavna; (3) that Arvind stayed away from home without notice or reason; (4) that he caused Bhavna to suffer mental abuse and to be in fear of her physical safety; (5) and that his actions caused the marriage to be unbearable for Bhavna.
¶ 7. At trial, Bhavna's sister, Kusum "Kay" Patel, testified to corroborate Bhavna's marital problems. She told the court how Bhavna was never happy in the marriage, how Bhavna was in poor health because she could not sleep, and how Bhavna was always afraid that Arvind would hit her. Kay was aware of a number of specific instances of abuse. Bhavna told Kay that Arvind had hit her while she was pregnant with their son and that she had to go to the hospital in 1995 after Arvind hit her in the face. Kay also told the court that, because of Bhavna's marital problems, Bhavna tried to commit suicide by overdosing on Tylenol, which resulted in a trip to the emergency room.
¶ 8. Besides the abuse, Kay also testified that Bhavna told her that Arvind had a girlfriend during the marriage. According to Kay, Bhavna did all the housework, including taking care of Arvind's mother. She also helped to run the hotels that she and Arvind owned. Even though she knew about her sister's problems with Arvind, Kay never encouraged her to leave him. She thought it would be best for their children if they stayed together.
¶ 9. Bhavna took the stand and recounted the problems she had and abuses she suffered throughout her marriage to Arvind. *960 Problems surfaced almost immediately as Bhavna learned that Arvind had a girlfriend, even though he and Bhavna had recently gotten married. His adulterous nature also led to his and Bhavna's contraction of a sexually transmitted disease some years later.
¶ 10. As far as physical abuse, Bhavna claimed that Arvind would abuse her two or three times each year. She said the frequency of abuse had recently dropped to just once a year. Nevertheless, Bhavna told the court that Arvind once hit her in the face when she was pregnant with her son. Years later, Arvind again hit her in the face, which required that Bhavna go to the hospital because of the injuries to her jaw. Another time, after Arvind had been out at a casino all night without calling, he was arrested following an argument. During that argument he pinned Bhavna to the floor with his hands on her throat. The last instance she recounted was when Arvind hit her with a belt. It was following this incident that Bhavna left Arvind for the last time.
¶ 11. In addition to the physical abuse and the adultery, Bhavna testified that Arvind would continually subject her to verbal abuse, even threatening her life three times. She said that she was never happy in the marriage, and she was always in fear of abuse. Nevertheless, just as Bhavna's sister never encouraged her to divorce Arvind, Bhavna told how her family also encouraged her to remain married, despite the abuse. Bhavna told the court that on two occasions she attempted to commit suicide to escape her marriage. She said she first tried to kill herself when she was living in Florida and later when she tried to overdose on Tylenol.
¶ 12. Bhavna did not call Arvind as a witness, and the court's sanctions prevented Arvind from taking the stand himself or calling any witnesses. At the conclusion of the trial, the chancellor entered an order denying Bhavna's request for a divorce based on cruel and inhuman treatment. He found that Bhavna failed to carry her burden of proving cruel and inhuman treatment by a preponderance of the evidence.

STANDARD OF REVIEW
¶ 13. The scope of review in a domestic relations case is limited by the substantial evidence/manifest error rule. Mizell v. Mizell, 708 So.2d 55, 59(¶ 12) (Miss.1998). We will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Id. at 59(¶ 13). However, we will conduct a de novo review for questions of law. Russell v. Performance Toyota, Inc., 826 So.2d 719, 721(¶ 5) (Miss.2002). The chancellor's determination of whether a spouse's conduct rose to the level of cruel and unusual treatment is a determination of law. Potts v. Potts, 700 So.2d 321, 322(¶ 10) (Miss.1997); Reed v. Reed, 839 So.2d 565, 569(¶ 13) (Miss.Ct.App.2003). Such a finding is reversible if the chancellor employed an erroneous legal standard. Potts, 700 So.2d at 322(¶ 10).

ISSUES AND ANALYSIS
I. Whether it was error to deny Bhavna a divorce.
¶ 14. Bhavna first argues that it was against the weight of the evidence to deny her a divorce from Arvind based on cruel and inhuman treatment. Bhavna claims that the chancellor erred in weighing the evidence and in failing to consider her subjective apprehension of harm. Furthermore, she argues that the abuse was not condoned and that the chancellor punished her for not calling her children to testify. Based on the foregoing claims, *961 Bhavna concludes that she met her burden and was entitled to a divorce from Arvind.
¶ 15. The causes for divorce are provided for by section 93-5-1 of the Mississippi Code Annotated (Rev.2004), which states that a divorce decree may be based on habitual cruel and inhuman treatment. Conduct that evinces habitual cruel and inhuman treatment must be such that it either (1) "endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief" or (2) "is so unnatural and infamous" as to make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance. Mitchell v. Mitchell, 767 So.2d 1037, 1041(¶ 14) (Miss.Ct.App.2000) (citing Daigle v. Daigle, 626 So.2d 140, 144 (Miss.1993)). In making a determination, the chancellor must look to "(1) the conduct of the offending spouse and (2) the impact of the conduct upon the plaintiff." Fisher v. Fisher, 771 So.2d 364, 367(¶ 10) (Miss.2000).
¶ 16. The cruel and inhuman treatment must be proven by the preponderance of credible evidence. Smith v. Smith, 614 So.2d 394, 396 (Miss. 1993). Although cruel and inhuman treatment usually must be shown to have been systematic and continuous, a single incident may provide grounds for divorce. Rakestraw v. Rakestraw, 717 So.2d 1284, 1287(¶ 8) (Miss.Ct. App.1998).
¶ 17. In this case, Bhavna testified to continuing abuse and mistreatment at the hands of Arvind beginning at the time they were married and continuing until she left him for the second and final time in 2005. Despite her testimony, the testimony of her sister, the evidence she presented, and the discovery admissions, the chancellor found that Bhavna's "main complaint was of being unhappy, embarrassed and desirous of a change in affection by the Defendant." After reviewing the record, we do not agree that was Bhavna's main complaint, nor do we find that she failed to meet the standard required to grant a divorce based on cruel and inhuman treatment.
¶ 18. In support of her claim of divorce, Bhavna testified that Arvind physically abused her approximately two to three times per year throughout most of their marriage. She admitted that the frequency of the physical abuse lessened toward the end of the marriage, but it continued to happen at least once a year. Bhavna did not go into detail about each instance of abuse that occurred throughout their twenty-seven-year marriage. She did, however, tell the court about the times when Arvind hit her while she was pregnant, struck her in the face, pinned her to the ground with his hands on her throat, and struck her with a belt. She also said she could not sleep on her right side because of an injury she sustained when Arvind pushed her. Bhavna claimed that all of the abuse created in her a sense of fear that Arvind might abuse her at any time.
¶ 19. In addition to the physical abuse, Bhavna told the court that Arvind would constantly verbally harass her and that he threatened her life on three occasions. Arvind would often stay out all night without telling Bhavna, and he lost excessive amounts of money at the casinos. Bank records that Bhavna entered into evidence reflected thousands of dollars that Arvind spent during each trip to the casino, with more than $50,000 spent there in 2004.
¶ 20. Arvind was also unfaithful to his wife. Soon after Bhavna and Arvind were married, Bhavna found out that he had remained in a relationship with one of his *962 girlfriends. Later on, Bhavna even contracted a sexually transmitted disease from Arvind as a result of his adultery. Ultimately, Arvind's treatment of Bhavna led her to attempt to commit suicide twice and to move out of the marital home on two occasions.
¶ 21. Rule 8.03 of the Uniform Chancery Court Rules requires that "in all uncontested divorce cases, except irreconcilable differences, the testimony of the plaintiff must be substantially corroborated." This Court has stated the following:
The corroborative evidence will be sufficient if it proves such substantial facts and circumstances as will serve to engender in a sound and prudently cautious mind a confident conclusion that the testimony of the complainant is true in all essential particulars, and is not the exaggerated product of those wishful mental processes which passion and the consuming present desire for the relief prayed, so often present in this type of cases.
Reed, 839 So.2d 565 at (¶ 25) (quoting Anderson v. Anderson, 190 Miss. 508, 513, 200 So. 726, 728 (1941)).
¶ 22. To corroborate her testimony, Bhavna put her sister on the stand. Bhavna lived with her sister, Kay, at the time of trial, and she had gone to stay with Kay previously when she left Arvind. Kay recounted some of the injuries Bhavna suffered during the marriage. Kay also told the court about one of Bhavna's suicide attempts and her general sense of unhappiness and discontent that resulted from the abuse. Bhavna offered into evidence photographs representing some of her injuries and medical records to document Arvind's abuse and her attempted suicide. The requests for admissions that the chancellor deemed admitted were also corroborative of Bhavna's version of the facts.
¶ 23. Mississippi courts have affirmed divorce decrees in which the underlying case was based on similar corroborative evidence. See Labella v. Labella, 722 So.2d 472, 474(¶ 6) (Miss.1998) (photos and father's testimony sufficient corroboration to prove cruel and inhuman treatment); see also McKee v. Flynt, 630 So.2d 44, 48-49 (Miss.1993) (husband's admission of two abusive incidents and testimony of witnesses who observed bruises and scratches were sufficient corroboration); Fulton v. Fulton, 918 So.2d 877, 880-81 (¶¶ 7-10) (Miss.Ct.App.2006) (three witnesses, none of whom saw any actual abuse, were sufficient corroboration).
¶ 24. On appeal, Arvind also argues for condonation. However, the chancellor did not address condonation, and Arvind's argument has no merit. After Bhavna moved back into the marital home, Arvind resumed his abusive ways by striking Bhavna with a belt one night. Cruel and inhuman treatment is not condoned when the parties continue to cohabit, but it may be condoned if the parties resume their relationship after a separation. Langdon v. Langdon, 854 So.2d 485, 490-91(¶ 18) (Miss.Ct.App.2003). "However, where condonation has occurred, if the cruel conduct subsequently occurs, the previous offenses are revived for the chancellor's consideration of the ground of habitual cruel and inhuman treatment." Id. Bhavna did not condone Arvind's abuse of her throughout the years, and even though she moved back home with him, his prior actions were revived for consideration when he resumed his old habits by striking her with a belt.
¶ 25. Ultimately, we find that Bhavna met her burden of proving cruel and inhuman treatment by a preponderance of the evidence. She offered her testimony of the physical, verbal, and emotional abuse and its impact on her. We also find that *963 Bhavna provided sufficient corroboration to support her claim. The evidence established that the relationship was unsafe for Bhavna, and it was so revolting to her that she could not continue with the marriage.
¶ 26. Arvind was not allowed to call any witnesses, and he did not rebut Bhavna's version of events. He cross-examined witnesses and argued that Bhavna failed to carry her burden of proof. The chancellor agreed with Arvind and found that Bhavna's evidence was insufficient to grant her a divorce. However, applying a de novo review, we find that the evidence was sufficient and that the chancellor applied an erroneous legal standard in ruling that Bhavna did not prove cruel and inhuman treatment by a preponderance of the evidence. We, therefore, reverse on this issue and remand to the chancery court with instructions to enter a divorce decree and for further proceedings consistent with this opinion.
II. Whether the chancellor improperly weighed the requests for admissions that were deemed admitted.
¶ 27. Bhavna next argues that it was error to deny her motion to alter or amend judgment pursuant to Rule 59(e) of the Mississippi Rules of Civil Procedure. She claims the chancellor did not give the proper weight to the requests for admissions that were deemed admitted after Arvind refused to answer. The chancellor referenced the discovery admissions and took them into consideration in his ruling, but Bhavna argues that the chancellor should have found that the admissions conclusively established grounds for divorce based on habitual cruel and inhuman treatment.
¶ 28. "[I]n order to succeed on a Rule 59(e) motion, the movant must show: (i) an intervening change in controlling law, (ii) availability of new evidence not previously available, or (iii) need to correct a clear error of law or to prevent manifest injustice." Brooks v. Roberts, 882 So.2d 229, 233(¶ 15) (Miss.2004). We will review a trial court's denial of a Rule 59 motion under an abuse of discretion standard. Id.
¶ 29. The chancellor relied on section 93-5-7 of the Mississippi Code Annotated (Rev.2004), which states that, in divorce proceedings, "admissions made in the answer shall not be taken as evidence." However, in this case, the admissions at issue were not taken from Arvind's answer to Bhavna's complaint. The admissions deemed admitted resulted from Bhavna's requests for admissions to which Arvind refused to respond. Pursuant to Rule 36(a) of the Mississippi Rules of Civil Procedure, a matter will be deemed admitted if the party upon whom the request was served does not respond nor file an objection addressed to the matter. Thereafter, the matter is conclusively established unless the court permits the admission's withdrawal or amendment. M.R.C.P. 36(b).
¶ 30. In his ruling, the chancellor also took into account the interest of the State in the marriage. The State has an interest in divorce proceedings, which is represented through the court. Rawson v. Buta, 609 So.2d 426, 430 (Miss.1992). The supreme court held the following:
It is the duty of the court, regardless of the pleadings of the parties, to fully inquire into the facts and circumstances of each case and to act accordingly. The [S]tate's interest is proven through its refusal to allow default judgments in divorce cases and its requirement of proof on the pleadings.
Id.
¶ 31. In the order denying Bhavna's motion to alter or amend the judgment, *964 the chancellor noted that the admissions were "accepted as conclusive in so far as they went." The order denying Bhavna's motion stated that "[t]he Court considered those admissions with the other proof and found the Plaintiff's proof insufficient to establish cruel and inhuman treatment." Therefore, the chancellor took the admissions into consideration, but he found that the admissions, combined with Bhavna's testimony and the other evidence, were insufficient to establish grounds for divorce.
¶ 32. As dealt with in the previous point of error, it is with the chancellor's determination of the sufficiency of the evidence that we find error, not his treatment of the admissions. The chancellor properly deemed the requests for admissions to be admitted and, thereafter, treated them as conclusive. He also considered them in light of the State's interest in divorce proceedings.
¶ 33. As Bhavna and the chancellor both point out, admissions may go to the ultimate issue in a case. Gilcrease v. Gilcrease, 918 So.2d 854, 858(¶ 7) (Miss.Ct. App.2005). However, the admissions in this proceeding do not go to the ultimate issue. The following were deemed admitted:
(1) You have committed sexual intercourse with someone other than your spouse during marriage.
(2) You have physically abused your wife.
(3) You have tried to strangle your spouse during the marriage.
(4) You have hit your spouse during the marriage.
(5) You have yelled at and cursed your spouse during the marriage.
(6) You have stayed away from the marital residence overnight without justification or reasonable notice to your spouse during the marriage.
(7) You have whipped your spouse with a belt during the marriage.
(8) You have punched your spouse during the marriage.
(9) You have caused your spouse to be in fear for her physical safety during the marriage.
(10) You have caused the marriage to become unbearable for your spouse due to your actions toward her.
(11) You have caused your spouse to suffer mental abuse during the marriage.
(12) On or about July 13-14, 2004, you were absent from the marital residence overnight until approximately 5:30 a.m., leaving no information with your spouse as to your whereabouts.
While they do not establish the ultimate issue, the admissions do corroborate Bhavna's testimony in support of a divorce on the ground of cruel and inhuman treatment.
¶ 34. We do not find that the chancellor abused his discretion in denying the motion to alter or amend the judgment in regard to the weight given to the admissions. The chancellor took the admissions "as conclusive in so far as they went." They were not conclusive, in and of themselves, of the ultimate issue, as Bhavna claims. This issue is without merit.
III. Whether it was error to set aside the entry of default and allow Arvind to file an untimely answer to the complaint.
¶ 35. Bhavna's last argument is that it was error for the chancellor to set aside the entry of default and to allow Arvind to file an answer more than a year after Bhavna filed her complaint.
*965 ¶ 36. We will review a trial court's decision to vacate an entry of default using an abuse of discretion standard. Stanford v. Parker, 822 So.2d 886, 887-88(¶ 6) (Miss.2002). There are three factors for a trial court to consider in deciding whether to set aside a default judgment: (1) the cause of default, (2) whether the defendant has a colorable defense to the claim, and (3) any prejudice to the plaintiff that would result if the judgment was vacated. Id. at 888(¶ 6).
¶ 37. The chancellor took these factors into account in his decision to set aside the default. The chancellor found that there was good cause for Arvind's failure to timely file a response to the pleading. Specifically, Arvind wanted to reconcile with Bhavna, a purpose the chancellor found was best served by not filing an answer at the time. The parties did reconcile and remained together for almost a year before Bhavna again went to live with her sister. The chancellor also found that Arvind might have had a meritorious defense and that there was no prejudice to Bhavna because she, nevertheless, had to prove the elements of her divorce claim.
¶ 38. We do not find this was an abuse of discretion; therefore, it was not error to set aside the entry of default and allow Arvind to file an answer. This issue is without merit.
¶ 39. THE JUDGMENT OF THE CHANCERY COURT OF LOWNDES COUNTY IS AFFIRMED IN PART AND REVERSED IN PART AND REMANDED TO THE CHANCERY COURT WITH INSTRUCTIONS TO ENTER A DIVORCE DECREE AND FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.