CARLTON, J.,
 

 for the Court.
 

 ¶ 1. Mary Hoskins filed a petition for divorce in the Panola County Chancery Court against her husband, Ronald Hos-kins, on the grounds of habitual cruel and inhuman treatment and desertion. The chancellor dismissed Mary’s divorce action for failing to meet the burden of proof. Mary appealed the chancellor’s decision. Finding no error, we affirm the judgment of the chancery court.
 

 FACTS
 

 ¶ 2. Mary and Ronald married in Panola County on August 4, 1979. The couple separated on December 29, 2004, when Mary left the marital home. According to Mary, she left because Ronald told her that he hated and despised her, threatened to kill her, and demanded that she leave the marital home. Mary testified that Ronald had moved out of the couple’s bedroom and into a spare bedroom months before the separation.
 

 ¶ 3. Upon leaving the marital home, Mary resided with her sisters, Martha Bland and Jackie Smith. She later moved into an apartment in Batesville, Mississippi. Ronald and Mary remained separated, and Mary filed her petition for divorce on
 
 *707
 
 April 30, 2007. After a day of trial on June 30, 2008, the chancellor dismissed Mary’s divorce petition, after a motion from Ronald, finding that Mary failed to prove that the marriage ended because of Ronald’s cruel and inhuman treatment of her or that Ronald had deserted Mary.
 

 ¶4. On appeal, Mary argues that the chancellor erred in his application of the law regarding corroboration of cruel and inhuman treatment and “constructive desertion” as well as in his evaluation of the facts in evidence.
 

 STANDARD OF REVIEW
 

 ¶ 5. This Court will not disturb a chancellor’s denial of a divorce unless we determine that the chancery court was “manifestly wrong as to law or fact” or abused its discretion.
 
 Dorman v. Dorman,
 
 737 So.2d 426, 429(¶ 6) (Miss.Ct.App.1999). We review questions of law de novo.
 
 Ku-mar v. Kumar,
 
 976 So.2d 957, 961(¶ 13) (Miss.Ct.App.2008).
 

 DISCUSSION
 

 I. Whether the chancellor erred in denying Mary a divorce on the grounds of habitual cruel and inhuman treatment.
 

 ¶6. Mississippi Code Annotated section 93-5-1 (Supp.2008) provides the grounds for obtaining a divorce in Mississippi and includes the ground of habitual cruel and inhuman treatment. The party seeking a divorce on the ground of habitual cruel and inhuman treatment bears the burden of proving her ground by a preponderance of the evidence.
 
 Shavers v. Shavers,
 
 982 So.2d 397, 403(¶35) (Miss.2008). This Court has defined habitual cruel and inhuman treatment as follows:
 

 Conduct that evinces habitual cruel and inhuman treatment must be such that it either (1) “endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief’[;] or (2) “is so unnatural and infamous” as to make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance.
 

 Kumar,
 
 976 So.2d at 961 at (¶ 15) (citing
 
 Mitchell v. Mitchell,
 
 767 So.2d 1037, 1041 (¶ 14) (Miss.Ct.App.2000)).
 

 ¶ 7. The complaining spouse’s testimony alone is inadequate to establish habitual cruel and inhuman treatment to obtain a divorce. The supreme court has held that a divorce on the ground of habitual cruel and inhuman treatment “will not be granted on the uncorroborated testimony of the complainant.”
 
 Anderson v. Anderson,
 
 190 Miss. 508, 512, 200 So. 726, 727 (1941). The testimony presented to support the claim of habitual cruel and inhuman treatment should be sufficient to convince a “prudently cautious mind” that the plaintiffs allegations are true and not exaggerations for the purpose of obtaining a divorce.
 
 Id.
 
 at 513, 200 So. at 728. Both this Court and the supreme court have upheld cases in which the chancellor denied a divorce for lack of corroborating evidence.
 
 See Hassett v. Hassett,
 
 690 So.2d 1140, 1146 (Miss.1997);
 
 Chamblee v. Chamblee,
 
 637 So.2d 850, 860 (Miss.1994);
 
 Gardner v. Gardner,
 
 618 So.2d 108, 114 (Miss.1993).
 

 ¶ 8. In some cases, however, the plaintiff may not need to provide corroborating evidence. The supreme court in
 
 Anderson
 
 noted an exception to the general rule requiring corroboration “in a case where, in its nature or owing to the isolation of the parties, no corroborating proof is reasonably possible.”
 
 Cochran v. Cochran,
 
 912 So.2d 1086, 1089(¶12) (Miss.Ct.App.
 
 *708
 
 2005) (quoting
 
 Anderson,
 
 190 Miss, at 512, 200 So. at 727).
 

 ¶ 9. To support her allegations of habitual cruel and inhuman treatment, Mary testified that she left the marital home after Ronald told her that he hated and despised her and demanded that she leave the home. Mary testified that Ronald “touched me to my nose, and he said to me ... I’m going to kill you. No one else can live in this house-if I can’t live here, no one else can live here. And he said that he would burn the house down, me in it.” Mary further testified that Ronald regularly made accusations that she committed adultery. Mary testified that Ronald once threatened to rape her.
 

 ¶ 10. Mary also testified that Ronald exhibited controlling behavior toward her. Ronald put a note on the thermostat of their home prohibiting anyone from turning on the heater or air conditioner in the home. He treated her family differently than his family when they visited in the marital home. Ronald talked down to Mary and belittled her. Further, Mary claims that Ronald controlled the family finances, including her income, forcing her to purchase clothing for her minor children on credit cards. Further, Mary claimed that Ronald expected her to “submit herself as a wife.”
 

 ¶ 11. Additionally, Mary testified that she experienced health problems while living with Ronald that subsided after the couple’s separation. She testified that she had trouble sleeping, nervousness, and high blood pressure, for which she sought medical treatment. Since the separation, Mary testified, her symptoms have greatly improved.
 

 ¶ 12. Without addressing the issue of whether Ronald’s conduct rose to the level of habitual cruel and inhuman treatment, the chancellor dismissed Mary’s complaint. He found that Mary failed to meet her burden of proof because her allegations were uncorroborated. Mary argues that the chancellor “misunderstood the law relative to ‘corroborating testimony.’ ” She contends that the chancellor mistook Uniform Chancery Court Rule 8.03 “to be the decisive law relative to corroborating testimony in a divorce action when such a rule does not adequately state the current status of the law.” Additionally, Mary argues that she provided adequate corroboration for her claims that she suffered habitual cruel and inhuman treatment during her marriage to Ronald.
 

 ¶ 13. The chancellor made no indication in his bench ruling that he relied on Rule 8.03. The chancellor made no reference to specific case law or to the Uniform Chancery Court Rules. The chancellor stated that the evidence Mary presented to support her divorce petition “would not be sufficient corroboration to get [Mary] ground[ ] of habitual cruel and. inhumane [sic] treatment, and [if] it goes to the Supreme Court, they’d reverse it, just like that. For that reason, I’m sustaining the motion to dismiss.”
 

 ¶ 14. The chancellor applied the appropriate legal standard in denying Mary a divorce on ground of habitual cruel and inhuman treatment. As discussed above, the law requires that Mary’s testimony be corroborated in order to satisfy her burden of proof.
 
 Anderson,
 
 190 Miss, at 512, 200 So. at 727. Mary contends that Ronald made threats to her in private; thus, no corroborating proof existed. Therefore, she argues that providing corroboration for her testimony was not reasonably possible.
 
 See id.
 
 However, while Mary alleges that Ronald threatened her in private, she does not address the lack of corroboration for her other claims. Further, Mary and Ronald did not live in isolation. Mary worked outside the home and visited family members throughout
 
 *709
 
 the marriage. Ronald and Mary shared their home with their two adult children and a grandchild who was in Mary’s custody. Neither of the couple’s children, who should have known of Ronald’s cruel and inhuman treatment of Mary, testified at the trial. Their children would have witnessed Ronald’s controlling behavior and the negative impact Mary claims Ronald’s behavior caused on her health.
 
 See Cochran,
 
 912 So.2d at 1089 (¶¶ 14-15) (holding that wife must provide corroboration for her allegations of cruel and inhuman treatment despite her claim that the parties were isolated).
 

 ¶ 15. Ronald admitted at trial that he had told Mary she needed to submit herself as a wife because “she didn’t cook for me, she didn’t wash my clothes, she didn’t iron my clothes ... and I gave her everything her heart desired. God knows that I love her.” Ronald also admitted asking Mary whether she had engaged in affairs. The remainder of Ronald’s testimony related to Mary’s claim of constructive desertion and property matters.
 

 ¶ 16. To corroborate her claims, Mary called her sister, Martha Bland, to testify. Most of Martha’s testimony consisted of hearsay, to which Ronald objected. Martha testified regarding her first-hand knowledge of Ronald and Mary’s relationship, but she failed to provide corroboration of Mary’s claims that Ronald treated Mary cruelly. She testified that Ronald “was pretty demanding over [Mary] in situations. I can remember just a simple card game, you know, the way that he would talk to her. If she made a mistake in just a card game, that’s stupid, you’re so silly. You know, things like that.” Martha testified that she visited in the couple’s home often when they first married, but she visited less often after a while because Ronald teased Martha about her weight. She testified that he asked visitors to remove their shoes in the home, and she felt like Ronald just did not want company.
 

 ¶ 17. Additionally, Martha testified that Mary seldom attended family functions. When she did attend, Martha testified that she seemed rushed and ready to return home. Martha testified that Mary acted “jittery, nervous or whatever if she was around us for a certain period of time.” Martha testified that Mary’s demeanor changed after her separation from Ronald. Martha testified that the night Mary left the marital home, she was “nervous and upset,” but her demeanor changed “after the separation, after a few weeks, few months, or whatever.” Further, Martha testified regarding Mary’s condition prior to the separation from Ronald, stating: “At one point, she was always going to the doctor, something was always wrong it seemed like. It seems like after the separation, it seemed like things, physically, she just changed.” Martha could not, through first-hand knowledge, explain the cause of Mary’s ailments.
 
 See Chamblee,
 
 687 So.2d at 860 (holding that wife’s claims of abuse were uncorroborated when neighbor saw bruises on wife’s arm but possessed no knowledge of their origin).
 

 ¶ 18. Though Mary claimed she sought medical attention during the marriage for conditions that improved after she and Ronald separated, she presented no medical evidence. Though Martha testified that Mary “was always going to the doctor,” Mary offered no medical records or testimony from her physicians regarding her conditions.
 

 ¶ 19. Despite Mary’s contention that she provided adequate corroboration for her claims, the chancellor found that she failed to meet her burden of proof. The chancellor acts as the trier of fact and evaluates the credibility of the witnesses and the weight of their testimonies.
 
 Id.
 
 (quoting
 
 Polk v. Polk,
 
 559 So.2d 1048, 1049
 
 *710
 
 (Miss.1990)). The chancellor applied the correct legal standard by requiring Mary to corroborate her testimony. Therefore, this issue is without merit.
 

 II. Whether the chancellor erred in failing to grant Mary a divorce on the ground of desertion.
 

 f 20. In addition to her allegations of habitual cruel and inhuman treatment, Mary alleged that Ronald deserted the marriage for the space of one year.
 
 [1]
 
 Mary relied on the doctrine of constructive desertion, alleging that Ronald’s behavior drove her away from the marital home. The Mississippi Supreme Court has defined constructive desertion as follows:
 

 If either party, by reason of such conduct on the part of the other as would reasonably render the continuance of the marital relationship unendurable, or dangerous to life, health or safety, is compelled to leave the home and seek safety, peace and protection elsewhere, then the innocent one will ordinarily be justified in severing the marital relation and leaving the domicile of the other, so long as such conditions shall continue, and in such case the one so leaving will be not guilty of desertion. The one whose conduct caused the separation will be guilty of constructive desertion and if the condition is persisted in for a period of one year, the other party will be entitled to a divorce.
 

 Grant v. Grant,
 
 765 So.2d 1263, 1267(¶ 10) (Miss.2000) (quoting
 
 Day v. Day,
 
 501 So.2d 353, 356 (Miss.1987)). Chancellors should grant a divorce on the ground of constructive desertion only in extreme cases.
 
 Deen v. Deen,
 
 856 So.2d 736, 738(¶ 11) (Miss.Ct.App.2003) (citing
 
 Griffin v. Griffin,
 
 207 Miss. 500, 505, 42 So.2d 720, 722 (1949)).
 

 ¶ 21. Mary’s allegations under the constructive-desertion theory are essentially the same as her allegations that Ronald’s behavior constituted habitual cruel and inhuman treatment. She claims that: Ronald demanded that she leave the marital home; he exhibited controlling behavior toward her; he talked down to her and belittled her; and his behavior caused her to experience health problems. This Court has explained the distinction between habitual cruel and inhuman treatment and constructive desertion as follows:
 

 As noted by one commentator, “the line between the heretofore seldom used ground of constructive desertion and the ground of habitual cruel and inhuman treatment [is] blurred” with the only distinction being that in the former, the non-complaining party is compelled to leave and the objectionable conduct continues for one year.
 

 Shorter v. Shorter,
 
 740 So.2d 352, 358(¶ 29) (Miss.Ct.App.1999) (quoting Shelton Hand, Jr., Mississippi Divorce, Alimony and Child Custody, § 4, n. 71 (4th ed.1996)).
 

 ¶22. The chancellor found that Mary failed to corroborate her claim of cruel and inhuman treatment. Thus, it follows, she failed to corroborate her claim of constructive desertion. Furthermore, the chancellor found that Mary made no attempts to reconcile with Ronald, though Ronald testified that he had asked Mary to come home. Mary argued at trial that Ronald had changed the locks to their home. However, upon further questioning, Mary admitted that she first tried to re-enter the marital home the day of the trial, and her key would not unlock the main entrance to the home.
 

 ¶ 23. Mary’s uncorroborated testimony was insufficient to convince the chancellor that Ronald’s conduct made the marriage
 
 *711
 
 “unendurable, or dangerous to life, health or safety.”
 
 Grant,
 
 765 So.2d at 1267(¶ 10). Thus, the chancellor did not err in dismissing Mary’s divorce complaint. This issue is without merit.
 

 ¶ 24. THE JUDGMENT OF THE PA-NOLA COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Miss.Code Ann. § 93-5-1.